Day, J.
 

 The order of the Public Utilities Commission found that:
 

 ‘ ‘ The Erie Railroad Company has been using the yard master at the Erie yards at Kent for the purpose of supplying the necessary man to full crew certain operations and that during the time the said yard master is so occupied there is no one to perform the duties of yard master.
 

 “In the opinion of the Commission, this is a double assignment of duties to the yard master and the statute [Section 12557-1, General Code], as well as the safe operation of the yards [Section 614-3, General Code], requires that the yard master’s com
 
 *576
 
 píete time should be given to his duties as yard master and that he should not be required to fill in, in order to complete a crew for operations within the yard.”
 

 Was this order unreasonable or unlawful? We think not, in view of the fact that the record shows that the yard master in the Kent yard of the Erie Railroad Company on divers occasions performed duties not only of a yard master, but also of conductor, brakeman, and helper on switching crews. In the testimony of 0. B. Murray, an inspector in the railroad department of the Public Utilities Commission, this statement appears :
 

 “Q. just without any conclusion as to what it was, just state what was actually done by the railroad company and who did it? A. Violation occurred on last October, if I remember the time correctly, it was between ten and eleven o’clock at night. The switching crew, I presume that would be the east end, were switching cars and the crew at that time consisted of an engineer, fireman, conductor and two brakemen, and while they were switching cars, there was a train, I believe one of their merchandise trains, came in, and while it had stopped this yard engine was on the lead track switching and kicked some cars down in the various yard tracks and one of the brakemen who was assigned to some duties, throwing switches or opening couplers, or otherwise, the field man, was left down there, the engine was cut off and brought up in charge of the conductor and the one brakeman, the movement was made to cut off three or four cars from the dead end, which this yard engine did back into this track, the yard master went across and assisted the crew,
 
 *577
 
 part of the crew, rather, in which he personally cut off these cars and gave signals with a flashlight; in other words, in violation of their own rules.
 
 * * *
 

 “He cut off the car, gave the signal with the flashlight, had to bring that in on account of it being dark, and then not following up with the crew and making the movement from one track or the various tracks in which he was going to cut these cars or make these movements, he immediately turned around and went into the switch office and let the one brakeman and conductor handle that movement from that point on. ” 1
 

 In the testimony of T. H. Burke, also an inspector for the Public Utilities Commission, the following testimony occurs, in response to interrogatories by members of the Commission, where the witness replied, at page 15: “Well, I was in the Kent yard at night and I saw Yardmaster O’Brien take the engine by himself and go down to the west end of the yard and switch out eleven cars and his men were in the shanty eating their lunch.”
 

 In truth, the railroad company does not deny this practice by yard masters of assisting the switching crew in the yard, and leaving the yard master’s office for periods of fifteen minutes to an hour. The record discloses an admission by counsel for the railroad company as follows: “Would it help any, save any time, if the railroad will admit that there are occasions when the yard master will, for a short interval of time, substitute for or take the place and do the work of a conductor or brakeman? ’ ’
 

 It would therefore seem that the position of the railroad company was that the practice was entirely lawful, and was not unreasonable.
 

 
 *578
 
 The record further discloses, iu the testimony of Trainmaster William White, in response to an inquiry by Chairman ITopple of the Public Utilities Commission: “Q. I was going to ask you, Mr. White, what particular operating responsibility, so far as the movement of cars is concerned, and switching operations are concerned, what particular responsibility rests upon the yard master as such? A. As yard master, he is responsible for seeing that the proper classifications are made of cars, that the switching is performed efficiently, economically and safely.”
 

 Prom the entire record the Commission found that the safe operation of the yards required that the yard master’s complete time should be given to his duties as yard master, and that he should not be required to fill in, in order to complete a crew for operation within the yard.
 

 Section 614-3, General Code, among other things, gives the Public Utilities Commission power and jurisdiction to supervise and regulate public utilities and railroads and “to promulgate and enforce all orders relating to the protection, welfare and safety of railroad employees and the traveling public. ’ ’
 

 It is claimed, this action starting as a citation for violation of Section 12557-1, General Code, the full crew law, that the Commission had no power to consider a violation of Section 614-3, General Code. In view of the fact that the opening sentence of the citation order read as follows: “The Commission having under consideration the operating practices of The Erie Railroad Company in the matter of switching operations at Kent, Ohio, * * * by per
 
 *579
 
 mitting the yard masters stationed at said point to act as the conductor in charge of switching crews,” we do not think that the railroad company was misled as to what the subject of investigation was, or deprived of any substantial right.
 

 Under the provisions of Section 614-3, The Commission had-power to1 order a railroad company to desist from the practice of permitting a yard master to act as a member of the crew of trains operating within the yard during the time when he is performing the duties of yard master.
 

 This record containing evidence supporting the order of the Commission to desist from the practice of “permitting the yard master to act as a member of the crew of trains' operating within the yard during the time when he is performing the duties of yard master,” its order in respect thereto was neither unreasonable nor unlawful, and it is therefore affirmed.
 

 Order affirmed.
 

 Jones, Matthias, Allen and Kinkade, JJ., concur.
 

 Marshall, C. J., and Stephenson, J., not participating.