Matthias, J.
 

 The practical effect of the order complained of is that each freight train operated by the appellant between Barberton and East Akron is required to have a caboose as a component part thereof and operated in connection therewith.
 

 The major contention made by the appellant is that such order is unlawful for the reason that the Public Utilities Commission is without authority to make such order; that its action constitutes an attempt to exercise legislative power, and that the making of such order exceeds the supervisory and regulatory powers authorized by the Constitution to be conferred upon the Public Utilities Commission by the General Assembly.
 

 The order was made by, the commission pursuant to Section 614-3, General Code, which provides:
 

 “The Public Utilities Commission of Ohio is hereby vested with the power and jurisdiction to supervise and regulate ‘public utilities’ and ‘railroads’ as herein defined and provided and to require all public utilities to furnish their products and render all services exacted by the commission, or by law, and also to pro
 
 *286
 
 mulgate ■ and enforce all order§ relating to the protection, welfare and safety of railroad employees and the traveling public.”
 

 The contention is made by appellant that in the absence of a statute specifically requiring the operation of a caboose as a part of a freight train on any railroad, the commission is without authority to issue an order making such requirement, even though the commission finds the use and operation of a caboose as a part of a freight train to be a necessary factor in and for the “protection, welfare and safety of railroad employees and the traveling public. ’ ’
 

 Reliance is based upon the decision of this court in the case of
 
 State, ex rel. Public Utilities Commission,
 
 v.
 
 New York Central Rd. Co.,
 
 115 Ohio St., 477, 154 N. E., 790, to support that contention. That case was decided December 21, 1926. It is quite significant that thereafter, on April 6, 1929 (113 Ohio Laws, 256), Section 614-3, General Code, was duly amended by adding to the power and jurisdiction theretofore vested in the Public Utilities Commission to “supervise and regulate * * * ‘railroads’ ” the power and jurisdiction to “promulgate and enforce all orders relating to the protection, welfare and safety of railroad employees and the traveling public. ’ ’
 

 Section 34, Article II of the Constitution, reads: “Laws may be passed * * * providing for the comfort, health, safety and general welfare of all employees; and no other provision of ,the Constitution shall impair or limit this power.”
 

 Railroad employees and particularly trainmen constitute a clearly defined class of employees, constantly engaged in an occupation attended by great hazard and exposure to the elements. The order made by the commission was designed to afford some relief from that hazard and exposure, would operate to promote
 
 *287
 
 the protection, welfare and safety of such employees and is, therefore, clearly within the obvious purpose intended to be served by the provisions of Section 614-3.
 

 Is the power thus sought to be exercised legislative in character? In our opinion this question must be answered in the negative. The necessity of the delegation of administrative functions to boards and commissions in order that the very evident purpose of enabling statutes may be made effective has been long-recognized and sanctioned. The general rule applicable is concisely stated as follows in the recent case of
 
 Belden v. Union Central Life Ins. Co.,
 
 143 Ohio St., 329, 55 N. E. (2d), 629:
 

 “It is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix standards for the guidance of administrative agencies of government while leaving- to such agencies the making', of subordinate rules within those fixed standards and the determination of facts to which the legislative policy applies. ’ ’
 

 Even more in point here, however, is the following statement contained in the syllabus in the case of
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220:
 

 “7. Asa general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid
 
 *288
 
 and constitutional without such restrictions and limitations.” See, also,
 
 Strain, Dir., Trustee,
 
 v.
 
 Southerton,
 
 148 Ohio St., 153.
 

 Orders made by the Public Utilities Commission pursuant to the provisions of Section 614-3, General Code, have been affirmed by this court in the following cases:
 
 Erie Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 124 Ohio St., 573, 179 N. E., 924, where, upon a finding that the safe operation of trains so required, a y'ardmaster was precluded from acting as a member of a train crew operating within the yard limits;
 
 New York Central Rd. Co. v. Public Utilities Commission,
 
 130 Ohio St., 548, 200 N. E., 759, where, upon finding the use of a pusher engine -in the rear of a caboose in an assembled train constituted a hazard to the members of the crew, the commission ordered such engine to be operated only ’in front of all occupied cabooses; and
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 139 Ohio St., 373, 40 N. E. (2d), 429, where yardmasters were precluded from departing from regular duties and operating signals during the switching of cars.
 

 It is to be observed that'the order of the commission does not designate the location or specify the manner of operation of any caboose and in no wise interferes with the alleged right of the appellant to operate part of a train without air brakes, if that be necessary. We see no conflict between the order of the commission and the provisions of Section 8949, General Code, requiring that 85 per cent of the cars of a train have air brakes capable of operation by the engineer. ,
 

 The order of the commission involved in the instant case has application only to intrastate operations and can in no way affect or interfere with interstate operations or conflict with any federal statute or regulation of the Interstate Commerce Commission.
 

 
 *289
 
 The time factor was suggested and there is evidence in the record, somewhat in conflict however, as to the additional time necessary to conduct switching operations if the use of a caboose' is required. The avoidance of hazard and the reasonable exercise of care in the interest of safety in many instances have a tendency to lessen the speed of action or operation, but we are constantly admonished that safety should be given some consideration. The purpose'of the regulation authorized by the statute is protection, welfare and safety, and not speed of operation.
 

 In the case of
 
 Terminal Railroad Association of St. Louis
 
 v.
 
 Brotherhood of Railroad
 
 Trainmen, 318 U. S., 1, 87 L. Ed., 571, 63 S. Ct., 420, the Supreme Court of the United States had, under consideration the validity of an order of the Illinois Commerce Commission requiring cabooses on all designated runs in so far as they are within the confines of the state.
 

 , The statute of that state, it must be conceded, is more specific in the grant of authority to the commission relative to equipment, but the general power of the commission, as stated in such statute, is “to require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand. ’ ’
 

 It is stated in the opinion in that case:
 

 “As to both classes of runs [those within the state and those over a bridge between points in St. Louis, Missouri, and East St. Louis, Illinois] the effect of the order is in some measure to retard and increase the cost of movements in intérstate commerce.' This is not to say, however, that the order is necessarily invalid. In the absence of controlling federal legislation this court has sustained a wide variety of , state regulations of railroad trains moving in interstate commerce having such effect. * * * The record in the
 
 *290
 
 case does not afford a sure basis for calculating the costs to commerce resulting from the order against the costs to the safety and health of the workmen which it was intended to minimize, and there is evidence in the case that nearby railroads have seen fit in the absence of legal compulsion to provide cabooses in circumstances substantially similar to those upon which appellant relies to establish absence of state power.”
 

 The record in the instant case is voluminous and, as is usual, discloses disputes of fact and divergence of opinion. However, there is substantial evidence supporting the conclusions of the commission which may be summarized as follows:
 

 Cabooses were formerly in service on the trains operated between Barberton and. East Akron, but were discontinued in 1935. For them the cabins or so-called “dog-houses” were substituted.
 

 The cabins are constructed of steel on the tenders of the locomotives. They are four feet five inches high, six feet long and four feet wide. Each has a steel door and two windows, one at the rear and one at the side, and contains a bench long enough to seat three men. Access is had by way of a rear foot board and a steel ladder attached to the tender, or by walking from the cab of the locomotive across the coal in the tender and over the deck of the water tank, in doing which there are at times additional hazards because of accumulated ice.
 

 There is evidence that, by reason of the absence of a caboose, the trainmen were unable to provide themselves with necessary and proper clothing while away from terminal; that they were unable in the space provided to carry stretchers or necessary and proper first aid equipment and supplies; that there was no proper place to carry food and water or to eat their meals; and that insufficient opportunity was afforded to observe the movements of trains.
 

 
 *291
 
 The record discloses that there have been occasions when injuries were caused by collisions with automobiles at intersections.
 

 Concededly many of the required operations are performed by backing over considerable distances and across numerous highway intersections, which movement necessitates the presence of a trainman on the rear car, which is necessarily, the one most distant from the engine. The danger to the public accompanying such movements would be obviated or lessened by the use of cabooses properly equipped.
 

 Although it is urged that compliance with the order would entail some expense and that at the time of the hearing (1943) it was difficult to obtain, cabooses, it is to be observed that the appellant is owned jointly by the Baltimore & Ohio, the Erie, the Pennsylvania and the Akron,. Canton & Youngstown railroads, from which the appellant receives and to which it delivers cars in the service which it performs.
 

 These facts were evidently considered by the commission in determining the issue submitted to it.
 

 For the reasons above indicated, we are of the opinion that the order of the commission is neither unlawful nor unreasonable and that such order should be, and hereby is, affirmed.
 

 Order affirmed.
 

 Weygandt, C. ■ J., Turner, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.