THE CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RY. CO., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 71-756—Decided July 12, 1972.)

*Mr. James G. Headley,* for appellant
*Mr. William J. Brown,* attorney general, and *Mr. Thomas P. Michael,* for appellee.

84

*Per Curiam.* Appellant raises two propositions of law: (1) The order of the commission is against the weight of the evidence, and in light of the entire record is unlawful and unreasonable. (2) Since a landlord out of possession and control of the premises has no legal duty or obligation to make the premises safe and sanitary, the order of the commission requiring the appellant to eliminate the conditions on the grain company property has no basis at law and is unlawful and unreasonable.

Upon appeal from an order of the Public Utilities Commission, the Supreme Court cannot consider any matter which had not been specifically set forth in an application to the commission for a rehearing. See *Travis* v. *Pub. Util. Comm.* (1931), 123 Ohio St. 355; *Cincinnati* v. *Pub. Util. Comm.* (1949), 151 Ohio St. 353; *Marion* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 276; *Queen City Valves* v. *Peck* (1954), 161 Ohio St. 579; *Conneaut Telephone Co.* v. *Pub. Util. Comm.* (1967), 10 Ohio St. 2d 269; and R. C. 4903.-10.[2]

Since appellant did not raise the question of the weight of the evidence in its application for rehearing, we are barred from considering that issue at this time. However, independent of the weight of the evidence issue, we find no evidence authorizing the particular order issued by the commission.

Appellant's second proposition of law is that the order should not have issued, because the conditions complained of were not caused by appellant, but by an outside agency over which the appellant has no control.

---

[2]R. C. 4903.10 provides, in pertinent part: "After any order has been made by the Public Utilities Commission, any party who has entered an appearance in person or by counsel in the proceeding may apply for a rehearing in respect to any matters determined in said proceeding. * * *

"* * *

"Such application shall be in writing and shall set forth specifically the ground or grounds on which the applicant considers said order to be unreasonable or unlawful. *No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in said application.*" (Emphasis supplied.)

Essentially, it appears to be the position of counsel for the commission that the commission has the authority specifically to direct appellant, as the owner of the fee, somehow to solve the problem,—even though appellant's activities were not the cause of the conditions complained of; even though the grain company, at the direction of the Board of Health of the city of Cincinnati, had prior to the hearing engaged a pest control company in an attempt to solve the rodent problem; and even though it had installed new equipment in an effort to reduce the dust problem. The order does not state the manner by which *appellant,* an owner out of control of the premises, is to accomplish this.

It should be observed that the order issued by the commission was not to the effect that appellant not send any of its employees into the area of potential hazard while such hazard continues, but was to the effect that appellant, itself, "immediately eliminate or cause the elimination" thereof.

Upon an examination of the record, we conclude that the commission's order directing appellant to immediately eliminate the rodents, maggots and undue dust is unreasonable and unlawful, and therefore the order of the commission is reversed.

*Order reversed.*

SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

O'NEILL, C. J., and BROWN, J., dissent.

BROWN, J., dissenting. The appellant's operations on the subject property consist of providing railway service to the grain company via a track which connects the grain company facilities with the main railway network. Railroad personnel are employed in order to facilitate the operation of this spur and the railroad hopper cars operating thereon.

After a public hearing and consideration of the evidence, the attorney-examiner made these specific findings of fact, which are not in dispute before this court:

"1. The evidence produced at the hearing supports the allegation and complaint that the respondent has permitted the subject area to become infested with numerous rodents and maggots and that an undue amount of dust caused by unloading grain is prominent in the subject area.

"2. The employees of the respondent railroad are required to work in the area which is the subject of the instant complaint.

"3. Continued existence of the conditions found to exist results in unsafe and hazardous conditions of employment in the Gest Street Yard, Cincinnati, Ohio.

"4. Correction of the above-mentioned conditions must be established for the protection and safety of the employees who are required to work in the subject area."

Section 34, Article II of the Ohio Constitution, provides:

"Laws may be passed * * * providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power."

Pursuant to this grant of authority, the General Assembly has enacted R. C. 4905.04, which states:

"The Public Utilities Commission is hereby vested with the power and jurisdiction to supervise and regulate public utilities and railroads * * * *and to promulgate and enforce all orders relating to the protection, welfare, and safety of railroad employees* * * *." (Emphasis supplied.)

The Public Utilities Commission has plenary power under R. C. 4905.04 to promulgate and enforce orders relating to the protection, welfare and safety of railroad employees. *New York Central Ry. Co. v. Pub. Util. Comm.* (1936), 130 Ohio St. 548; *Baltimore & Ohio Rd. Co. v. Pub. Util. Comm.* (1951), 156 Ohio St. 282; *Akron & Barberton Belt Rd. Co. v. Pub. Util. Comm.* (1947), 148 Ohio St. 282.

See, also, *Ohio Transport, Inc.,* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 98.[a]

Appellant's position before this court is founded upon its being a lessor out of control of the premises. Appellant cites as analogous authority numerous tort liability cases relieving the landlord of responsibility for safe premises where entire control is in the lessee in possession. Thus, appellant's position is essentially that the grain company is the responsible party and that appellant had or has no power to prevent the conditions alleged.

However, the landlord-tenant cases cited by appellant are not relevant to this situation, wherein the Public Utilities Commission under R. C. 4905.04, *supra,* is "* * * vested with the power and jurisdiction to supervise and regulate public utilities and railroads, * * * to promulgate and enforce all orders relating to the protection, welfare, and safety of railroad employees." As stated in *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347, 355, 356:

"The authority of the state, with which we are dealing in this case, must be treated as an implied condition of any contract and such it is as much a part of the contract as though written into it. * * * The presumption is that when such contracts are entered into it is with the knowledge that the parties cannot, by making agreements on subjects involving the rights of the public, withdraw such subjects from the police power of the Legislature * * *."

All contracts by a public utility, such as the present lease, are subject to the paramount rights of the public as

---

[a]The same question as to the commission's exclusive jurisdiction in this specific area was raised in the case of *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Pub. Util. Comm.* (1963), 175 Ohio St. 130, and involved the same parties as the present action. This court, in a *per curiam* decision, rejected appellant's argument, saying at page 130:

"Appellant contends that the commission was without jurisdiction to make the determination and order in the instant case, and that the state Department of Health acting through the Cincinnati Board of Health had jurisdiction of the subject of this proceeding to the exclusion of the Public Utilities Commission.

"With such contention this court does not agree."

expressed by enactments of the General Assembly where authorized under the Constitution of this state, and all contracts by a public utility, *the subject matter of which involves the welfare of railroad employees,* will have read into them, with the same force and effect as if expressed in clear and definite terms, all valid public regulations then existing and theretofore enacted, essential for the promotion of health, safety, and welfare of such employees. The authority of the state to express its general police power must be recognized as an implied condition of any such contract. *Akron* v. *Pub. Util. Comm., supra* (149 Ohio St. 347).

The provisions of the state and federal constitutions, inhibiting laws impairing the obligation of contracts, do not affect the power of the state to protect those persons specified in R. C. 4905.04. The rights, privileges, and immunities arising from contract are subject to regulation by the General Assembly in matters relating to valid police powers. The principle seems well established that when a party to a lease agreement is one whose rights and powers were created for public purposes, here the lessor railroad, *and when the subject of a contract is one which affects the safety and welfare of railroad employees,* such a contract is held to be within the supervisory power and control of the General Assembly when exercised to protect the safety and health of these employees, and the lessor railroad may not rely on the terms of the lease to insulate itself from liability.

The record reveals that the employees of the appellant are employed in the operations of the railroad spur line that services the grain company. The findings of fact by the commission established that the *conditions complained of create a hazard to employees of appellant who are required to work in the area, and that, for the protection and safety of these employees, immediate elimination of the offending conditions and continued preventative measures must be accomplished.*

Furthermore, the Public Utilities Commission has the

same control over private tracks, so far as such tracks are used by common carriers in connection with a railroad for the transportation of freight, as it has over the tracks of such railroad. R. C. 4907.40. *Morgan Run Ry.* v. *Pub. Util. Comm.* (1918), 98 Ohio St. 218; *State, ex rel. McGhee,* v. *Morgan Run Ry. Co.* (1918), 99 Ohio St. 439.

And R. C. 4905.06 states:

"The Public Utilities Commission shall have general supervision over all public utilities within its jurisdiction as defined in Section 4905.05 of the Revised Code, and shall have power to examine such public utilities and keep informed as to the general condition, capitalization, and franchises and as to the manner *in which their properties are leased,* operated, managed and conducted with respect to the adequacy or accommodation afforded by their service, *the safety and security of the public and their employees,* and their compliance with all laws, orders of the commission, franchises, and charter requirements. The commission through the public utilities commissioners or inspectors or employees of the commission authorized by it, may enter in or upon, for purposes of inspection, any property, equipment, building, plant, factory, office, apparatus, machinery, device, and lines of any public utility." (Emphasis supplied.)

In the instant case, appellant operates as a common carrier in its servicing of the grain company. Since this railroad operation utilizes railroad employees, and the safety and security of these employees is jeopardized by a presence of rats, maggots and dust in the area of the grain company operation, the Public Utilities Commission has jurisdiction to inspect and enforce orders designed to alleviate such hazardous conditions and may enforce its findings of fact and law against the respondent railroad.

For the foregoing reasons the order of the Public Utilities Commission should be affirmed.