## GREATER CINCINNATI PLUMBING CONTRACTORS' ASSOCIATION et al., Appellants,

v.

## CITY OF BLUE ASH, Appellee.*

[Cite as *Greater Cincinnati Plumbing Contrs. Assn. v. Blue Ash* (1995), 106 Ohio App.3d 608.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940727.

Decided Sept. 29, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court was not allowed in (1996), 75 Ohio St.3d 1404, 661 N.E.2d 754.

610

*Davis & Hengelbrok, James W. Hengelbrok* and *Edwin C. Price, Jr.,* for appellants.

*Dinsmore & Shohl, Mark A. Vanderlaan* and *John C. Murdock,* for appellee.

HILDEBRANDT, Judge.

Three trade associations, a plumbing contractor, a mechanical contractor and a taxpayer-resident of the city of Blue Ash filed a complaint against the city of Blue Ash which questioned the legality and constitutionality of a new system of public works contracting called the "Design–Build Process," which the city utilized in July 1993. Plaintiffs requested injunctive relief and sought a declaratory judgment that design-build contracting was illegal. The city then filed a motion to dismiss. The trial court denied plaintiffs' request for injunctive relief, and converted the city's motion to dismiss to a motion for summary judgment. Plaintiffs then filed their motion for summary judgment.

The trial court granted the city's motion for summary judgment and denied plaintiffs' motion for summary judgment. Plaintiffs then filed this appeal. For the reasons expressed herein, we affirm the judgment of the trial court.

In the summer of 1993, the city initiated Phase III of the renovation of its recreation center. Phase III consisted of the construction of a fitness and exercise room, a lobby area, an administration area, a game room, a gym, and a pool concession area, along with renovations to the existing structure. The city solicited bids for Phase III under the design-build process, whereby the contractors would "examine the current facility and the proposed addition, and * * * come up with imaginative and operationally feasible approaches to addressing [the] mechanical, plumbing and other requirements." The design-build process provided end specifications to the bidding contractors, but transferred the determination of how to get there to the contractors. Plaintiffs argued that the design-build process utilized by the city for Phase III violated the city's charter and general state law.

While this cause was pending and because the trial court denied plaintiffs' request for injunctive relief, the city awarded the work on Phase III to bidding contractors who have completed the job. The city filed a motion to

dismiss this appeal because the case had become moot. However, an appellate court may retain an appeal for hearing and determination if it involves questions of public interest even though it has become moot so far as the parties to the particular action are concerned. *Ruprecht v. Cincinnati* (1979), 64 Ohio App.2d 90, 18 O.O.3d 60, 411 N.E.2d 504, paragraph one of the syllabus. This case involves matters of public interest concerning a city's authority in soliciting bids for public improvements. We, therefore, overrule the city's motion to dismiss the appeal.

In their two assignments of error, plaintiffs contend that the trial court erred in granting the city's motion for summary judgment and in denying their motion for summary judgment. Summary judgment is appropriately granted if there are no genuine issues of material fact and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 24 OBR 426, 494 N.E.2d 1101; Civ.R. 56(C). An order granting summary judgment will, therefore, be upheld only where the record discloses no genuine issue of material fact, and where the moving party is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

Plaintiffs argue that the city was not entitled to judgment because the city's charter did not authorize design-build contracting and the city was, therefore, required to follow general law on soliciting bids for its public improvement project. We do not agree.

Section 7, Article XVIII, Ohio Constitution provides that "[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 3 of Article XVIII empowers municipalities "[t]o exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The home-rule amendments to the Ohio Constitution "confer power on the municipality to frame and adopt a charter for its government, and to exercise thereunder all powers of local self-government as provided by Section 3." *Dies Elec. Co. v. Akron* (1980), 62 Ohio St.2d 322, 324–325, 16 O.O.3d 365, 366, 405 N.E.2d 1026, 1028, citing *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212. The citizens of the municipality are, thus, given power to construct their own local government and to operate it themselves. *Id.*

██ Charter municipalities have "the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State Personnel Bd. of Rev. v. Bay Village Civ. Serv. Comm.* (1986), 28 Ohio St.3d 214, 218, 28 OBR 298, 302, 503 N.E.2d 518, 522, citing *State ex rel. Hackley v. Edmonds* (1948), 150 Ohio St. 203, 212, 37 O.O. 474, 477, 80 N.E.2d 769, 773. Furthermore, charter municipality exercises of authority which involve powers of local self-government prevail over general state laws. *Novak v. Perk* (1980), 64 Ohio St.2d 43, 18 O.O.3d 251, 413 N.E.2d 784.

 However, a charter municipality's authority under Section 3, Article XVIII, Ohio Constitution is not unlimited. Under Section 3 of Article XVIII, the words "as are not in conflict with general laws" place a limitation upon the power to adopt "local police, sanitary and other similar regulation," but do not restrict the power to enact laws for "local self-government." *State Personnel Bd. of Rev. v. Bay Village Civ. Serv. Comm., supra; Novak v. Perk, supra; Dies Elec. Co. v. Akron, supra.* Furthermore, the powers granted to a municipality under Section 3 of Article XVIII are subject to other "restrictions or limitations contained in any other provision in the Constitution." *Dies Elec. Co. v. Akron, supra,* citing *State ex rel. Gordon v. Rhodes* (1951), 156 Ohio St. 81, 88, 45 O.O. 93, 96, 100 N.E.2d 225, 229.

In conformance with Section 7, Article XVIII, Ohio Constitution, the city adopted a charter which provides in pertinent part:

"To the extent not expressly prescribed by this Charter, all powers of local self-government now or hereafter granted by the Constitution and laws of the State of Ohio to municipal corporations shall be exercised as Council may determine. In the absence of an express Charter provision or a determination by Council, then such powers of local self-government may be exercised in accordance with general law."

The charter further provides that with all contracts, "Council shall authorize acceptance of the bid made by the responsible bidder who in Council's judgment offers the best and most responsive proposal to the City, considering quality, service, performance, record, and price."

██ The city's design-build bidding process for Phase III of its recreation facility improvements was not an exercise of municipal police power. Rather, the bidding process utilized for this public project was an exercise of the city's local self-government. Therefore, the city, as a charter municipality, in the exercise of its powers of local self-government under Section 3, Article XVIII, Ohio Constitution, may, pursuant to its charter, enact a bidding process for improvements to

public property which differs from the bidding process contained in the Ohio Revised Code. See *Dies Elec. Co. v. Akron, supra.*

Furthermore, the bidding process utilized by the city for Phase III of its recreation facility improvements was in conformity with the broad provisions of its charter. Under its charter, the city was required to accept "the bid made by the responsible bidder who in Council's judgment offers the best and most responsive proposal to the City, considering quality, service, performance, record, and price." Nothing in the bid documents for Phase III indicates that the city was compromising quality, service, performance, record or price in its use of the design-build bidding process. Furthermore, the bid documents clearly indicate that the bidder awarded the contract had to be responsible. Finally, the inclusion of a design proposal along with a price for the project does not undermine the city's ability to select the "most responsive proposal." The bidding contractors' proposed design had to conform to the existing structure and to the city's end specifications including the project's renovations and additions. We fail to see how the inclusion of a design along with a price causes these bids to be nonresponsive to the city. Nothing in the charter prohibits the use of this type of bidding process.

We further note that the use of design-build bidding constitutes competitive bidding. Competitive bidding provides for "open and honest competition in bidding for public contracts and [saves] the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms." *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, 204. Contractors under the design-build bidding process compete with each other in terms of price and design. Factors such as quality, service, performance and record are also part of the competitive process. The city's discretion in awarding a contract to the best design and cost is similar to the discretion provided under general state law to accept the "lowest and best bidder." R.C. 735.05.

We, therefore, hold that the city's use of design-build bidding for public improvements was a proper exercise of its home-rule power under its charter and that the use of this bidding process did not violate its charter. As there were no issues of fact to be resolved and as the city was entitled to judgment as a matter of law, the trial court properly granted the city's motion for summary judgment and denied the plaintiffs' motion for summary judgment.

The plaintiffs' two assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., and SUNDERMANN, J., concur.