Mike DeWine, Ohio Attorney General, By: Zachery P. Keller, Bridget C. Coontz, Assistant Attorneys General, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215, ATTORNEYS FOR APPELLANT
Frederick T. Bills, David T. Patterson, Weston Hurd L.L.P., 10 West Broad Street, Suite 2400, Columbus, Ohio 43215, Amicus Curiae, For American Council of Engineering Companies of Ohio
Patrick A. Devine, Ice Miller, Arena District, 250 West Street, Suite 700, Columbus, Ohio 43215, Amicus Curiae, For Ohio Contractors Association
Barbara A. Langhenry, City of Cleveland Director of Law, By: Gary S. Singletary, Elizabeth M. Crook, L. Stewart Hastings, Assistant Directors of Law, 601 Lakeside Avenue, Room 106, Cleveland, Ohio 44114, ATTORNEYS FOR APPELLEE
Eve V. Belfance, Director of Law, By: Brian D. Bremer, Akron Law Department, 161 S. High Street, Suite 202, Akron, Ohio 44308, Amicus Curiae, For City of Akron
Joseph F. Scott, Scott & Winters, The Caxton Building, 812 E. Huron Road, Suite 490, Cleveland, Ohio 44115, Amicus Curiae, For The Campaign to Defend Local Solutions, Legal Scholars, and the International Municipal Lawyers Association
BEFORE: S. Gallagher, J., Keough, A.J., and Celebrezze, J.
JOURNAL ENTRY AND OPINION
SEAN C. GALLAGHER, J.:
{¶ 1} Defendant-appellant state of Ohio ("the State") appeals the trial court's judgment and order granting a permanent injunction that enjoined the State from enforcing 2016 Ohio H.B. No. 180 ("H.B. 180") and R.C. 9.49, which was subsequently designated R.C. 9.75 (herein referred to as " R.C. 9.75"). Upon review, we affirm the decision of the trial court. We find that the enactment of R.C. 9.75 was not a valid exercise of the legislature's authority pursuant to Ohio Constitution, Article II, Section 34 (hereafter referred to as " Article II, Section 34") and that the statute unconstitutionally infringes upon the municipal home-rule authority guaranteed by Ohio Constitution, Article XVIII, Section 3 (herein referred to as " Article XVIII, Section 3").
I. Background
2003-The Cleveland Ordinance
{¶ 2} Cleveland Codified Ordinances ("C.C.O.") Chapter 188, which is commonly called the Fannie Lewis Law, was enacted in 2003. The Fannie Lewis Law imposes local hiring requirements on public construction contracts over $100,000 by requiring that a minimum of 20 percent of the total construction work hours be performed by Cleveland residents, and that no fewer than 4 percent of those resident work hours be performed by low-income persons. C.C.O. Sections 188.02(a)(1), 188.01(g). The restriction does not apply to out-of-state workers because it "excludes the number of hours of work performed by non-Ohio residents." C.C.O. Section 188.01(c). The ordinance requires a contractor to pay a certain monetary amount for noncompliance and affords the city other remedies. C.C.O. Section 188.05. At the *982 time of its passage, C.C.O. Chapter 188 comported with state laws.
{¶ 3} Cleveland City Council passed the Fannie Lewis Law because it believed the employment of Cleveland residents on construction projects funded, in part or in whole, with city assistance would help alleviate unemployment and poverty in the city of Cleveland. Although the efficacy of legislative policy decisions are largely irrelevant to judicial review, we note that the results of the Fannie Lewis Law have been largely favorable to Cleveland residents and low-income workers. The stipulated evidence presented to the court demonstrated that Cleveland residents averaged 21 percent of the hours worked on local Cleveland-financed construction contracts during the period 2013 to 2016. Over that period, Cleveland residents earned more than $34 million in wages. Of the 897,870 hours worked by Cleveland residents during this period, 100,638 hours were performed by low-income persons.
2014-Ohio Contractors Association Case
{¶ 4} Other Ohio cities, including Cincinnati, Columbus, and Akron, also impose local hiring requirements on public construction contracts. In 2014, the Ohio Contractors Association ("OCA") filed a complaint for injunctive and declaratory relief, alleging that the city of Akron's Local Hiring and Workforce Participation Policy violates the equal protection provision of both the United States Constitution and the Ohio Constitution. Ohio Contrs. Assn. v. Akron , N.D.Ohio No. 5:14CV0923, 2014 WL 1761611 (May 1, 2014). The federal court rejected the equal protection challenge, finding in part that "[Akron's] Local Hiring Policy does not create a competitive disadvantage for OCA members, all of whom currently stand on equal footing under the Policy with each other and with other contractors." Id. at *7. Subsequent to the federal court's decision, R.C. 9.75 was enacted.
2016-Enactment of R.C. 9.75
{¶ 5} In 2016, the General Assembly enacted what is now R.C. 9.75. R.C. 9.75 prohibits public authorities from requiring contractors on public improvement projects to employ a certain percentage of individuals who reside within a defined geographical area. R.C. 9.75 also prohibits the use of bid award bonuses or preferences to a contractor as an incentive to meet the local hiring requirements.
{¶ 6} R.C. 9.75(B) states as follows:
(1) No public authority shall require a contractor, as part of a prequalification process or for the construction of a specific public improvement or the provision of professional design services for that public improvement, to employ as laborers a certain number or percentage of individuals who reside within the defined geographic area or service area of the public authority.
(2) No public authority shall provide a bid award bonus or preference to a contractor as an incentive to employ as laborers a certain number or percentage of individuals who reside within the defined geographic area or service area of the public authority.
{¶ 7} In enacting the statute, the General Assembly referenced the right of an individual to choose where to live and Article II, Section 34, by recognizing the following:
(A) The inalienable and fundamental right of an individual to choose where to live pursuant to Section 1 of Article I, Ohio Constitution ;
(B) Section 34 of Article II, Ohio Constitution, specifies that laws may be passed providing for the comfort, health, safety, and general welfare of all employees, and that no other provision of *983 the Ohio Constitution impairs or limits this power, including Section 3 of Article XVIII, Ohio Constitution.
2016 Ohio H.B. No. 180, Section 3.
{¶ 8} The General Assembly also indicated that the statute was enacted to address a matter of statewide concern and to provide for the general welfare of all employees:
The General Assembly finds, in enacting section 9.49 of the Revised Code in this act, that it is a matter of statewide concern to generally allow the employees working on Ohio's public improvement projects to choose where to live, and that it is necessary in order to provide for the comfort, health, safety, and general welfare of those employees to generally prohibit public authorities from requiring contractors, as a condition of accepting contracts for public improvement projects, to employ a certain number or percentage of individuals who reside in any specific area of the state.
2016 Ohio H.B. No. 180, Section 4.
2016-City of Cleveland Case
{¶ 9} On August 23, 2016, plaintiff-appellee the city of Cleveland ("the City") filed a verified complaint for declaratory judgment, temporary restraining order, and injunctive relief. The City also filed a motion for temporary restraining order and for preliminary and permanent injunction. The City challenged the constitutionality of R.C. 9.75, claiming the General Assembly improperly invoked Article II, Section 34 in enacting the statute and that the statute unconstitutionally infringes upon the City's home-rule authority.
{¶ 10} After the State responded, an expedited hearing was held and the trial court granted a preliminary injunction. The parties filed a joint stipulation waiving further argument or submission of evidence. Thereafter, the trial court granted the City's motion for permanent injunction upon considering all evidence from the preliminary injunction hearing and the pleadings and other filings of the parties.
{¶ 11} In a detailed opinion, the trial court found that "H.B. 180 was improperly enacted [under Article II, Section 34 ] because it does not provide for the comfort, health, safety, and welfare of employees; rather, H.B. 180 seeks only to dictate the terms by which municipalities may contract for workers in construction projects within their realm." The trial court then proceeded to consider whether the statute unconstitutionally interfered with the City's home-rule authority. The trial court applied the three-part test to determine whether a state statute takes precedence over a local ordinance and found in favor of the City on its claims.
{¶ 12} The trial court granted the City's motion for a permanent injunction and enjoined the State from enforcing R.C. 9.75, finding as follows:
(1) The General Assembly's reference to Article II, Section 34 of the Ohio Constitution as a justification for enacting H.B. 180 is improper, not well taken, and unconstitutional.
(2) H.B. 180 violates the Ohio Constitution by infringing upon the City's Home Rule powers of local self-government.
(3) H.B. 180 is not a general law and violates the Ohio Constitution by infringing upon the City's Home Rule authority to adopt and enforce within the City's limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
This appeal followed.
II. Assignments of Error
{¶ 13} The State presents the following two assignments of error for our review:
*984 1. The trial court erred by ruling that R.C. 9.75 falls outside the General Assembly's power to pass laws for employees under Article II, Section 34 of the Ohio Constitution.
2. The trial court erred by ruling R.C. 9.75 violated Article XVIII, Section 3 of the Ohio Constitution, Ohio's Home Rule Amendment.
III. Article II, Section 34 Analysis
{¶ 14} Article II, Section 34, which pertains to welfare of employees, states as follows:
Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power.
Ohio Constitution, Article II, Section 34.
{¶ 15} The first issue we must address is whether R.C. 9.75 was validly enacted pursuant to Article II, Section 34 and thereby prevails over C.C.O. Chapter 188. If so, any home-rule analysis is unnecessary. Lima v. State , 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, ¶ 16. As the Supreme Court of Ohio held in Lima , even if it is assumed the City's ordinance was a valid exercise of its home-rule authority, Article II, Section 34 expressly states that "no other provision of the constitution shall impair or limit" the power granted to the General Assembly pursuant to Article II, Section 34. Id. at ¶ 15-16. The court has made clear that " '[t]his prohibition, of course, includes the "home rule" provision contained in Section 3, Article XVIII.' " Id. at ¶ 15, quoting Rocky River v. State Emp. Relations Bd. , 43 Ohio St.3d 1, 13, 539 N.E.2d 103 (1989).
{¶ 16} The constitutionality of a statute is a question of law, which we review de novo and without deference to the trial court's decision. State v. Ware , 8th Dist. Cuyahoga No. 96327, 2011-Ohio-5665, 2011 WL 5237286, ¶ 24. Further, we must remain mindful of "the long-established principle requiring courts to presume the constitutionality of legislative enactments[,]" which presumption "can only be overcome by proof, beyond a reasonable doubt, that the legislation and the Constitution are clearly incompatible." Rocky River at 10, 539 N.E.2d 103.
{¶ 17} The Supreme Court of Ohio has repeatedly interpreted Article II, Section 34 as a "broad grant of authority to the General Assembly, not as a limitation on its power to enact legislation." Lima at ¶ 11. The court has upheld the constitutionality of statutes enacted pursuant to Article II, Section 34 on a number of separate occasions.
{¶ 18} In State ex rel. Bd. of Trustees of Police & Firemen's Pension Fund v. Bd. of Trustees of Police Relief & Pension Fund of Martins Ferry , 12 Ohio St.2d 105, 107, 233 N.E.2d 135 (1967), the court upheld the constitutionality of a statute that required local police and firefighters' pension funds to transfer their assets to a newly created state-controlled police and fireman's disability and pension fund. Id. at syllabus. The court found Article II, Section 34 was dispositive of the issues presented. Id. at 137.
{¶ 19} In Rocky River , the court upheld the constitutionality of a statute that mandated binding arbitration between a city and its safety forces in the event of a collective-bargaining impasse. Rocky River , 43 Ohio St.3d 1, 539 N.E.2d 103, at paragraph two of the syllabus. The court recognized the broad grant of authority to the legislature to provide for the welfare of all working persons and found that the statute was concerned with the general welfare of employees.
*985 Id. at 13, 539 N.E.2d 103. The court found that because Article II, Section 34 governed the case, the home-rule provision was inapplicable. Id. at 13, 539 N.E.2d 103. The court indicated that Article II, Section 34 overrides the home-rule provision and that this is the case even when the statutory scheme constitutes a substantial infringement of local powers of self-government. Id. at 17, 539 N.E.2d 103, citing Pension Fund .
{¶ 20} In Am. Assn. of Univ. Professors v. Cent. State Univ. , 87 Ohio St.3d 55, 717 N.E.2d 286 (1999), the court upheld the constitutionality of a statute that increased teaching-hour requirements for faculty at state universities. The court found that even when the legislation burdens rather than benefits employees, "the General Assembly considered this to be a situation where the public interest necessitated legislative intervention" and that "Section 34 should continue to be interpreted as a broad grant of authority to the General Assembly to pass such legislation." Id. at 61-62, 717 N.E.2d 286.
{¶ 21} In Lima , the court upheld the constitutionality of a statute that prohibits a political subdivision from requiring employees, as a condition of employment, to reside in a specific area of the state. Lima , 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616. The court again considered the broad grant of authority conferred by Article II, Section 34 and found that "[b]y allowing city employees more freedom of choice of residency, R.C. 9.481 provides for the employees' comfort and general welfare." Id. at ¶ 13. The court recognized that the General Assembly, in enacting the statute, was concerned with "a condition of employment" requiring public employees to reside in a specific area, and had expressly declared that "it is a matter of statewide concern to generally allow the employees of Ohio's political subdivisions to choose where to live" and to generally prohibit such a condition of employment "in order to provide for the comfort, health, safety, and general welfare of those public employees." Id. Because the court concluded the statute was validly enacted pursuant to Article II, Section 34, it found that the Home Rule Amendment did not apply and that any home-rule analysis was unnecessary. Id. at ¶ 16.[1]
{¶ 22} In Kaminski v. Metal & Wire Prods. Co. , 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, the court found R.C. 2745.01, limiting an employee's intentional tort suit against an employer, does not violate Ohio Constitution, Article II, Section 34 or 35. Id. at ¶ 101. The court emphasized that the decisions of the court have "conclusively established that Section 34, Article II is not a limitation on the General Assembly's authority to legislate." Id. at ¶ 68.
{¶ 23} The above decisions reflect the Supreme Court of Ohio's broad interpretation of Article II, Section 34. Article II, Section 34 grants the legislature authority to enact laws "providing for the comfort, health, safety and general welfare of all employees. " (Emphasis added.)[2] However, the reach of Article II, Section 34 is not unlimited.
*986 {¶ 24} Unlike the statute involved in Lima , R.C. 9.75 does not relate to any residency requirement imposed as a condition of employment by employers upon public employees. Further, despite the General Assembly's representations expressed in H.B. 180, R.C. 9.75 does not relate to the right of an individual to choose where to live or a matter implicating the general welfare of all employees. As the trial court recognized, "[t]here are no protections afforded to employees under H.B. 180, and no portion of the bill relates to the comfort, health, safety or general welfare of these contractors." Rather, by its express terms, R.C. 9.75 seeks to limit the contracting powers of local authorities on public improvement projects.
{¶ 25} It is readily apparent that R.C. 9.75 is no more than an attempt to preempt powers of local self-government and to restrict the contract terms between public authorities and contractors who choose to bid on local public improvement contracts. H.B. 180 was not advanced by a labor or worker group. It was advanced by a contractor association, not for the benefit of workers, but to benefit their interests. The contractors' interest is in streamlining contract interactions with municipalities by limiting the ability of municipal governments to place terms or requirements on public contracts that are awarded within those municipal jurisdictions. The American Council of Engineering Companies of Ohio said as much in their amicus curie brief when they noted: "The legislation was passed in order to secure the comfort and welfare of contractors and designers in the construction industry." (Emphasis added.)
{¶ 26} In this instance, the residency language in H.B. 180 is being improperly used to access the unassailable protections that Article II, Section 34 affords statutes enacted pursuant to that constitutional provision. As found by the trial court, R.C. 9.75"seeks only to dictate the terms by which municipalities may contract for workers in construction contracts within their realm." Upon review, we agree that the General Assembly had no authority to enact R.C. 9.75 under Article II, Section 34. Accordingly, we shall proceed to consider whether the statute unconstitutionally infringes upon the City's home-rule authority.
IV. Home-Rule Analysis
Few areas of our law have proved as troublesome as the application of the Home Rule Amendment. Since the adoption of the amendment in 1912, we have considered no fewer than 100 cases in which we have endeavored to decide whether an enactment by the General Assembly overrides a municipal law. The sheer volume of these cases is indicative of-and a consequence of-our failure to articulate and apply clear and consistent standards. The result is that neither cities nor the legislature can say with any particular degree of certainty-on any particular day-who can do what.
(Emphasis added.) Dayton v. State , --- Ohio St.3d ----, 2017-Ohio-6909, 87 N.E.3d 176, ¶ 55 (DeWine, J., dissenting).
{¶ 27} The problems associated with addressing cases involving the application of Ohio's Home Rule Amendment are not isolated to the Supreme Court of Ohio. Appellate panels across Ohio face the same challenge. Today, we again find ourselves confronted with the challenging tasks of defining certain parameters of the Ohio Constitution and the Home Rule Amendment.
{¶ 28} Municipalities derive their powers of self-government directly from Ohio's Home Rule Amendment, *987 Ohio Constitution, Article XVIII, Section 3, which provides as follows:
Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
Canton v. State , 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 8.
{¶ 29} There is a three-part test to determine whether a state statute takes precedence over a municipal ordinance. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." Id. at ¶ 9.
{¶ 30} First, there is no debate that the statute is in conflict with the ordinance. That prong is satisfied.
{¶ 31} Next, we consider whether the Fannie Lewis Law is an exercise of the police power, rather than of local self-government. In differentiating the two, the Supreme Court of Ohio has stated as follows:
"An ordinance created under the power of local self-government must relate 'solely to the government and administration of the internal affairs of the municipality.' " [ Marich v. Bob Bennett Constr. Co. , 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 11 ], quoting Beachwood v. Cuyahoga Cty. Bd. of Elections , 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus. Conversely, "the police power allows municipalities to enact regulations only to protect the public health, safety, or morals, or general welfare of the public." Id. , citing Downing v. Cook , 69 Ohio St.2d 149, 150, 431 N.E.2d 995 (1982).
Complaint of Reynoldsburg v. Columbus S. Power Co. , 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 25.
{¶ 32} The trial court determined that the Fannie Lewis Law does not protect the general welfare of the public and is not an exercise of the City's police power. The trial court found that the Fannie Lewis Law "is a job creation tool" and "an exercise of local self-government to create contracting requirements within the municipality of Cleveland."
{¶ 33} The State claims the Fannie Lewis Law is an exercise of police power because it was passed to improve the economic welfare of Cleveland residents, has significant extraterritorial effects, and imposes a monetary penalty for noncompliance. However, the State's argument ignores that the requirements of C.C.O. Chapter 188 only come into play if a contractor chooses to bid on and receives a municipal contract as defined under the ordinance.
{¶ 34} The City argues that the Fannie Lewis Law is an exercise of local self-government. The City cites to Dies Elec. Co. v. Akron , 62 Ohio St.2d 322, 405 N.E.2d 1026 (1980), wherein the Supreme Court of Ohio recognized the authority to contract arises as a power of local self-government under the Home Rule Amendment. In Dies , the court determined that a charter city could, under the Home Rule Amendment, enact by ordinance retainage provisions for a contract for improvements to municipal property that differed from the retainage provisions of a state statute. Id. at 327, 405 N.E.2d 1026. The court stated: "[I]t is well established that this charter city had the power to contract and that the terms of its ordinance should be considered a part of that contract." Id. at 326-327, 405 N.E.2d 1026 ; see also *988 Trucco Constr. Co. v. Columbus , 10th Dist. Franklin No. 05AP-1134, 2006-Ohio-6984, 2006 WL 3825262, ¶ 24 (finding city's procedure for letting of contracts was an exercise of local self-government and conflicting state statute relating to letting of contracts was inapplicable); Greater Cincinnati Plumbing Contrs. Assn. v. Blue Ash , 106 Ohio App.3d 608, 613-614, 666 N.E.2d 654 (1st Dist.1995) (finding city's design-build bidding process for public improvements was a proper exercise of the city's local self-government under the Home Rule Amendment).
{¶ 35} We agree with the City's position. We find the Fannie Lewis Law is an exercise of local self-government in the form of terms or provisions of a contract incorporated into City construction projects.
{¶ 36} We also reject the State's arguments that the ordinance has significant extraterritorial effects and imposes a monetary penalty for noncompliance. The Fannie Lewis Law is not a residency law. As the trial court noted:
[T]he Fannie Lewis law does not contain any residency requirements for employees of the political subdivision, nor does the law require the City's contractors to set any resident requirements for their employees; instead the Fannie Lewis Law sets thresholds for those persons assigned to work on public projects. These workers may or may not be employees of those businesses who contract with the city. There is no condition to employment or contract that the workers for the construction company reside in any specific area of the state.
{¶ 37} The record reflects that the City enacted the Fannie Lewis Law to address local poverty and unemployment concerns. Cleveland City Council understood that "the employment of City residents on construction projects funded, in part or in whole, with City assistance will help alleviate unemployment and poverty in the City." Comparable to the case in Dies , the City enacted by ordinance provisions or terms associated with public construction contracts. Further, it was within the City's contracting authority to include a damages provision for noncompliance with the contractual terms or provisions.
{¶ 38} Upon review, we conclude that the Fannie Lewis Law was not an exercise of police power. We agree with the trial court's determination that "[t]he Fannie Lewis Law is an exercise of local self-government to create contracting requirements within the municipality of Cleveland."
{¶ 39} Finally, we shall consider whether R.C. 9.75 is a general law. To determine if the statute is a general law, we apply the four-part general-law test set forth in Canton :
To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.
Canton , 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at syllabus.
{¶ 40} The trial court found, and the parties do not dispute, that R.C. 9.75 applies to all parts of the State alike and operates uniformly throughout the State. However, the trial court found the remaining three requirements were not met.
{¶ 41} We find that R.C. 9.75 is not part of a statewide and comprehensive legislative enactment. It is not part of a comprehensive plan or scheme, but rather aims to preempt and restrict local authority in the establishment of the terms of contracts for *989 public improvements. This is a matter embraced within the field of local self-government to which R.C. Chapters 153 and 5525 do not apply. See Dies , 62 Ohio St.2d at 326-327, 405 N.E.2d 1026.
{¶ 42} We also find that R.C. 9.75 does not set forth a police, sanitary, or similar regulation and only serves to limit the legislative power of a municipal corporation. The Supreme Court of Ohio has held that
"the words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution means [sic] statutes setting forth police, sanitary or similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations."
Canton , 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 15, quoting W. Jefferson v. Robinson , 1 Ohio St.2d 113, 205 N.E.2d 382 (1965), at paragraph three of the syllabus; see also Linndale v. State , 85 Ohio St.3d 52, 54-55, 706 N.E.2d 1227 (1999). The very language of R.C. 9.75 reflects an intent to preempt a public authority's exercise of local self-government in establishing the terms of its public improvement contracts, by providing: "No public authority shall require a contractor * * *."
{¶ 43} Additionally, we find the statute does not prescribe a rule of conduct upon citizens generally. A statute that merely imposes a limitation upon municipal legislative bodies is not a general law because the statute applies to municipal legislative bodies and does not prescribe a rule of conduct upon citizens generally. Canton at ¶ 34-36. As found by the trial court: "[ R.C. 9.75 ] fails to [prescribe] a rule of conduct for citizens across the state. Instead, it [prescribes] requirements that municipalities must follow when contracting with construction companies. There is no text in H.B. 180 that is directed toward employees or contractors."
V. Conclusion
{¶ 44} "The power of local self-government and that of the general police power are constitutional grants of authority equivalent in dignity. A city may not regulate activities outside its borders, and the state may not restrict the exercise of the powers of self-government within a city." Canton v. Whitman , 44 Ohio St.2d 62, 337 N.E.2d 766 (1975). R.C. 9.75 is an unconstitutional attempt to eliminate a local authority's powers of local self-government in negotiating the terms of public improvement projects. R.C. 9.75 was not a valid exercise of the legislature's authority pursuant to Article II, Section 34, and the statute unconstitutionally infringes upon the municipal home-rule authority guaranteed by Article XVIII, Section 3.
{¶ 45} Although offered in a dissent to the Lima decision, former Chief Justice Moyer offered some insight into the danger of the judiciary expanding legislative power at the expense of local authority when he noted:
[A] course has been set that will result in the resolution of very few important policy decisions by elected officials of local government when the General Assembly decides to intervene. The balance struck in the Ohio Constitution between the officials of local government determining those issues that have no statewide application and the General Assembly determining issues of general public interest is now tipped dramatically against the authority of local elected officials under the new conception of home rule.
I suggest that if such a dramatic change in the application of constitu *990 tional principles is to be created, it should be through an amendment to the Ohio Constitution and not through the decisions of this court.
(Emphasis added.) Lima , 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, at ¶ 24-25 (Moyer, C.J., dissenting).
{¶ 46} Judgment affirmed.
KATHLEEN ANN KEOUGH, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

In Assn. of Cleveland Firefighters v. Cleveland , 2013-Ohio-5439, 5 N.E.3d 676 (8th Dist.), this court found a city of Cleveland charter provision that afforded preference points for city residence created a "de facto" residency requirement that violated R.C. 9.481.

The Supreme Court of Ohio has applied Article II, Section 34 to the regulation of private employees. See Akron & B.B.R. Co. v. Pub. Util. Comm. , 148 Ohio St. 282, 74 N.E.2d 256 (1947) (recognizing Article II, Section 34 allows for the regulation of private railroad employees).