DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Metro Regional Transit Authority, appeals from the order of the Summit County Court of Common Pleas, which granted to appellee, Village of Silver Lake, declaratory judgment and injunctive relief and denied appellant's counterclaims for intentional interference with contracts and declaratory judgment. This Court reverses and remands.
 I. {¶ 2} On August 2, 2002, appellee filed a complaint to enjoin appellant from leasing its railroad right-of-way on the Akron Secondary line to a company which intended to operate a dinner excursion train on the line. Appellee premised its complaint on the assertion that the excursion train would constitute a commercial use, prohibited by appellee's zoning code. On December 4, 2002, appellee filed an amended complaint, seeking the same injunctive relief and additional declaratory judgment that appellant had no statutory authority to contract for operation of the excursion train. Appellant moved to dismiss appellee's complaint on the basis of federal preemption. In a companion case filed in the United States District Court for the Northern District of Ohio, the federal district court held that appellee's zoning code was not preempted by federal law. On February 10, 2005, the Sixth Circuit Court of Appeals affirmed the district court's opinion and judgment. See CuyahogaFalls Hudson Ry. Co. v. Village of Silver Lake (C.A.6, 2005), 122 Fed. Appx. 845.
 {¶ 3} Appellant filed counterclaims for declaratory judgment, seeking declarations that the trial court is without jurisdiction to hear the action; that appellant is immune from the operation of appellee's zoning code; and that appellant has statutory authority to enter into a contract for the operation of the excursion train over the Akron Secondary line. Appellant further filed a counterclaim alleging intentional interference with contracts.
 {¶ 4} The trial court scheduled the pending matters for hearing, but the parties agreed to forego oral hearing and submit the issues to the court on briefs. In addition to extensive briefing of the issues, appellant and appellee submitted stipulations to the trial court. The parties further stipulated to the authenticity and admissibility of 16 exhibits. There is no record, however, that the exhibits were ever filed with the clerk's office. Some stipulated exhibits were appended to other documents in the record and will be considered in relation to this appeal. The remaining stipulated exhibits not so appended are not part of the record and will not be considered by this Court.
 {¶ 5} The parties stipulated that appellee is a charter municipality, which was incorporated in 1918, after the establishment of the path of the subject railroad tracks. The subject tracks and right-of-way (the "Akron Secondary") consist of a 6.5-mile stretch of tracks from Cuyahoga Falls to Hudson. The Akron Secondary runs for 1.5 miles along the western border of appellee Village, and .8 miles of those tracks are adjacent to 33 Village homes. Although no trains have run on the Akron Secondary since 1994, the crossings are listed as "active" by the Public Utilities Commission of Ohio.
 {¶ 6} Appellant signed a purchase agreement with Conrail in 1995 for the subject tracks and right-of-way. The tracks were interstate freight railroads when owned by Conrail and its predecessor, the Penn Central Railroad. After a six-year assignment of the Akron Secondary to Summit County Port Authority, appellant reacquired the tracks and right-of-way in 2001. Conrail, however, retained the freight restart rights on the Akron Secondary and subsequently transferred those rights to Norfolk Southern Railroad.
 {¶ 7} In 2002, Adrian and Blissfield Railroad Company ("AB RR")[1]
contacted appellant about the possibility of running a dinner excursion train over the Akron Secondary. Appellant accepted AB RR's proposal, and the two entities executed a right-of-way lease agreement to accommodate the operation of the excursion train. The excursion train was intended to be a revenue-producing project for appellant.
 {¶ 8} Appellee Village is divided into three zoning districts, pursuant to codified ordinance. The districts include residential, parks and recreational, and institutional. No part of appellee Village is zoned for commercial use. Appellee asserts that the excursion train would constitute a commercial venture in violation of appellee's zoning code. The parties stipulated that appellant has not applied for a zoning variance with appellee.
 {¶ 9} In its order disposing of the matter below, the trial court first addressed appellant's statutory authority to contract for the operation of an excursion train. The trial court found that the proposed excursion train did not fit the definition of "transit facility" pursuant to R.C. 306.30, so that appellant's contract for such would exceed appellant's scope of authority. The trial court next determined that appellee had standing to seek declaratory judgment regarding the use of the Akron Secondary because of its interest in its property rights as they would be affected by the enforcement of appellee's zoning code. The trial court concluded by granting to appellee both declaratory judgment and injunctive relief, permanently enjoining appellant from operating the proposed excursion train after finding that appellee had shown that there was an "imminent threat" that the excursion train would violate appellee's zoning code. Appellant timely appealed, setting forth three assignments of error for review. This Court considers the assignments of error out of order for ease of review.
 II. ASSIGNMENT OF ERROR II
"The trial court erred as a matter of law in issuing a permanent injunction under r.c. 713.13 based upon an alleged zoning violation that does not and cannot arise under applicable law."
 {¶ 10} Appellant argues that the trial court erred in finding that there was an imminent threat that the proposed excursion train would violate appellee's zoning code, because appellee's zoning code specifically excludes the Akron Secondary line from its zoning districts. Appellant presents two alternative arguments, assuming arguendo that appellee has zoned the railroad line. First, appellant argues that appellee's zoning code prohibiting operation of railroads within the municipality is preempted by state law. Second, appellant argues that, because use of the Akron Secondary line predates appellee's zoning code, the proposed excursion train constitutes a non-conforming use that appellee cannot deny on the basis of its zoning code. Because this Court finds that appellee's zoning code excludes the Akron Secondary line from its zoning districts, this Court need not consider appellant's alternative arguments.
 {¶ 11} This Court applies an abuse of discretion standard of review in regard to the trial court's granting of an injunction and declaratory relief. Hampton Ridge Condominium Assn. No. 1 v. Hampton WoodsCondominium, Inc., 9th Dist. No. 22036, 2005-Ohio-9, at ¶ 5. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 12} There is no dispute that appellee Village is divided into three zoning districts. The parties stipulated to the authenticity and admissibility of the current zoning map of the Village of Silver Lake, dated May 16, 1994, which was identified in the parties' stipulation as Exhibit C. The May 16, 1994 Village zoning map was attached as an exhibit to defendant AB RR's memorandum in opposition to appellee's motion for preliminary injunction in the matter before the trial court. Therefore, the zoning map is part of the record and this Court considers it in regard to this appeal.
 {¶ 13} A review of the stipulated zoning map indicates that the Akron Secondary line, identified as the "Penn RR," runs along the length of appellee's western border, abutting a residential zone for approximately half the length of the border and abutting a parks and recreational zone for the other half. Pursuant to the map legend, residential zones are not shaded, while parks and recreational zones are shaded and include diagonal lines. The variation in zone demarcation is significant; because the railroad tracks and right-of-way are left unshaded, as they run along both the edge of the residential zone (unshaded) and the parks and recreational zone (shaded with diagonal lines). In other words, the narrow width of railroad tracks and right-of-way which forms the border between appellee Village and the city of Cuyahoga Falls is not designated to correspond with its adjacent zone for approximately half its length in appellee Village.
 {¶ 14} Appellee urges this Court to presume that any Village land not otherwise zoned as either parks and recreational or institutional must necessarily be zoned as residential. Based on a review of the zoning map, this Court cannot engage in that presumption. There is no way to determine from the zoning map whether any unshaded areas which might reasonably have been excluded from zone designation have been so excluded, or whether they have been zoned as residential. Appellee relies on the parties' stipulation that appellee Village has been divided into three types of zoning districts for the proposition that all Village land has necessarily been zoned. This Court cannot accord such expansive meaning to that stipulation on its face and looks for other evidence of appellee's intent to zone the railroad and right-of-way.
 {¶ 15} Section 1131.04 of appellee Village's planning and zoning code states in relevant part:
"The district boundary lines of the Zone Map enclose an area of a designated district, and generally follow the center lines of streets, alleys, lot lines or their extensions, provided however:
* * *
"(b) Where a district boundary line is shown as adjoining a railroad, it shall, unless otherwise fixed, be construed to coincide with the nearest boundary line of the railroad right of way[.]"
 {¶ 16} Section 1131.03 of appellee Village's planning and zoning code further provides in relevant part that "[t]he Map, or a print thereof, shall be on file with the Clerk of Council and the Building Inspector, and shall be the final authority as to the status of current zoning map districts."
 {¶ 17} By the plain language of appellee's zoning code, appellee's zoned residential and parks and recreational districts along its western border end at the nearest (eastern) boundary of the Akron Secondary line, and do not encompass the railroad and its right-of-way. Further, appellee cites no evidence to support its assertion that the districts are otherwise fixed to expressly include the Akron Secondary line within any designated district. Based on the authority of the stipulated zoning map, the zoning code's exclusionary provision relevant to railroad property, and the lack of other evidence indicating that the Akron Secondary line was otherwise fixed within a specified district, this Court finds that the Akron Secondary line within appellee's borders has been excluded from any zoning designation. Therefore, appellee is precluded from asserting any zoning violation premised on appellant's use of the railroad for the commercial operation of an excursion train. Under those circumstances, the trial court could not reasonably find any imminent threat that operation of the proposed excursion train would violate appellee's zoning code, because the railroad and right-of-way are excluded from any zoning district designation. The trial court, therefore, abused its discretion when it granted to appellee injunctive relief permanently enjoining appellant from operating the proposed excursion train. Appellant's second assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"The trial court erred as a matter of law in concluding that silver lake has the standing to seek a declaratory judgment that metro lacks the statutory authority to enter into a lease agreement."
 {¶ 18} Appellant acknowledges that appellee has standing to enforce its own zoning laws. Appellant argues, however, that appellee has no standing to challenge appellant's compliance with state law requirements relating to its authority to establish the operation of an excursion train, where there is no threat of an imminent violation of appellee's zoning code. This Court agrees in part and disagrees in part.
 {¶ 19} R.C. 2721.03, which provides for declaratory relief under certain circumstances, provides in relevant part:
"Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it."
 {¶ 20} Appellee claims that it has standing to seek a declaration regarding whether or not appellant's proposed contract with AB RR for the operation of an excursion train over the Akron Secondary line within appellee Village's border constitutes a proper use of the land. Appellee asserts its standing both as a person interested under the specific contract between appellant and AB RR and as a person whose rights are affected by R.C. Chapter 306, which addresses the powers and authority of rapid transit authorities like appellant. Appellee asserts a presumed injury premised on a violation of its zoning code, as well as injury premised on a presumed decrease in property value of homes affected by the operation of the excursion train.
 {¶ 21} Before appellee Village may contest a certain use of its zoned land, appellee must necessarily have designated the land for a specific use or precluded certain uses of the land. In this case, however, this Court has already found that appellee has expressly excluded the Akron Secondary line which runs for a 1.5 mile stretch within it borders from its zoning code. Appellee, by its zoning code, retained the ability to zone the railroad and right-of-way. Appellee might have "otherwise fixed" its zones to encompass the Akron Secondary line, but there is nothing to indicate that it did so. Because the Akron Secondary line, as it runs through appellee Village, remains unzoned, appellee cannot claim that appellant's proposed use of the line may violate appellee's zoning code. Under these circumstances alone, without any threat of a zoning code violation, appellee has no standing to seek a declaration that appellant's proposed commercial use of the railroad line is an improper use of the land.
 {¶ 22} Further, without an affirmative act by appellee to "fix" the railroad line within one of its designated zones, there is no presumption but that appellee anticipated that the railroad line could be used for any purpose lawfully accorded to appellant. Appellee asserts that its standing derives from the potential decrease in its property values, if appellant pursues the operation of an excursion train in excess of appellant's statutory authority to do so. This Court agrees.
 {¶ 23} There is no dispute that appellant is a regional transit authority, whose authority is governed by statute. While appellee may have neglected to zone the land occupied by the Akron Secondary line, that does not mean that it has relinquished that land or that it remains unaffected by any activity on the line. Appellee's property rights are affected by appellant's exercise of its statutory authority in regard to its use of the Akron Secondary line. Should appellant exceed its statutory authority in regard to its use of the Akron Secondary line, such "improperly authorized interference with [appellee's] right to control land use within it borders," as alleged in the amended complaint, might impact the health, safety and welfare of appellee Village. Under the circumstances, this Court finds that appellee has standing as a person whose rights, status or other legal relations are affected by the construction of appellant's statutory authority as a regional transit authority and that appellee has standing to request a declaration of its rights, status or other legal relations in that regard. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I
"The trial court erred as a matter of law in issuing a declaratory judgment that metro does not have the statutory authority to lease its property for interim use by the proposed excursion train."
 {¶ 24} Appellant argues that the trial court incorrectly applied an inapplicable statutory provision in determining that appellant exceeded its statutory authority by contracting for the operation of an excursion train on the Akron Secondary line. Amici curiae, the City of Akron; Southwest Ohio Regional Transit Authority, the County of Summit; the City of Cuyahoga Falls; Prosper Development Company, Ltd. and Ohio Investment Group, Ltd.; and the Ohio Public Transit Association, all concur in this argument in their respective briefs. This Court agrees.
 {¶ 25} This Court has already stated that the standard of review regarding the trial court's granting of declaratory relief is whether the trial court abused its discretion. Hampton Ridge Condominium Assn. No.1, at ¶ 5. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 26} In this case, however, the trial court premised its decision and declaration that appellant exceeded its statutory authority by contracting for operation of an excursion train upon its interpretation of R.C. 306.30, rather than upon any evidentiary determination. Under those circumstances, this Court does not review for abuse of discretion; rather, we review the matter de novo, because "statutory construction presents a legal issue which we review de novo." N. Fork Properties v.Bath Twp., 9th Dist. No. 21597, 2004-Ohio-116, at ¶ 9, quoting State v.Werner (1996), 112 Ohio App.3d 100, 103.
 {¶ 27} The trial court relied on R.C. 306.31 to identify the full scope of appellant's authority to act. R.C. 306.31 states in relevant part:
"A regional transit authority may be created in the manner provided in section 306.32 of the Revised Code, for any one or more of the following purposes: acquiring, constructing, operating, maintaining, replacing, improving, and extending transit facilities[.]"
There is no dispute that appellant is a validly created regional transit authority. The trial court then quoted the definition of "transit facility" in R.C. 306.30:
"`transit facility' means any: (A) Street railway, motor bus, tramline, subway, monorail, rapid transit, aeroplane, helicopter, ferry, or other ground or water transportation system having as its primary purpose the regularly scheduled mass movement of passengers between locations within the territorial boundaries of a regional transit authority[.]"
Finding that the proposed excursion train did not appear to have as its primary purpose the "movement of passengers between locations," the trial court found that the excursion train did not meet the definition of "transit facility." The trial court then reasoned that appellant's contract with AB RR for the operation of the excursion train exceeded the scope of appellant's statutory authority pursuant to R.C. 306.31. We find that the trial court erred in finding that appellant's scope of authority was limited to the purposes enumerated in R.C. 306.31, which addresses merely the creation of a regional transit authority.
 {¶ 28} Pursuant to R.C. 306.32, when a regional transit authority is created by resolution or ordinance, that document must set forth, in part, the necessity for the creation of the regional transit authority and the purposes for which the regional transit authority is organized. R.C.306.32(A) and (H). In this case, the enabling legislation creating appellant regional transit authority states:
"SECTION 2. It is necessary to create said transit authority in order to preserve and maintain the current level of mass transit service within the boundaries of said transit authority, to promote the economic welfare of the residents of this community, to permit such residents to reach the places of employment or institutions for their education, to provide for such maintenance of the commerce and economy of this community, and to provide the administrative and financial capability to improve and upgrade mass transit service in the future." Akron Ordinance No. 196-1972; Barberton Ordinance No. 74-1972; Cuyahoga Falls Ordinance No. 83-1972.
 {¶ 29} Once a regional transit authority has been created, R.C. 306.35
delineates the authority's powers and duties, stating in part that the authority:
"(B) May make contracts in the exercise of the rights, powers, and duties conferred upon it;
* * *
"(F) Shall have jurisdiction, control, possession, and supervision of all property, rights, easements, licenses, moneys, contracts, accounts, liens, books, records, maps, or other property rights and interests conveyed, delivered, transferred, or assigned to it;
"(G) May acquire, construct, improve, extend, repair, lease, operate, maintain, or manage transit facilities within or without its territorial boundaries, considered necessary to accomplish the purposes of its organization and make charges for the use of transit facilities;
* * *
"(J) May hold, encumber, control, acquire by donation, by purchase for cash or by installment payments, by lease-purchase agreement, by lease with option to purchase, or by condemnation, and may construct, own, lease as lessee or lessor, use, and sell, real and personal property, or any interest or right in real and personal property, within or without its territorial boundaries, for the location or protection of transit facilities and improvements and access to transit facilities and improvements, the relocation of buildings, structures, and improvements situated on lands acquired by the regional transit authority, or for any other necessary purpose, or for obtaining or storing materials to be used in constructing, maintaining, and improving transit facilities under its jurisdiction[.]"
 {¶ 30} The statutory scheme clearly distinguishes between the threshold purpose requirements for the creation of a regional transit authority and the broader powers of the authority once created.
 {¶ 31} In this case, appellant contracted with AB RR for the operation of an excursion train over the Akron Secondary line, which appellant had purchased. Appellant determined that the operation of the excursion train would both preserve and protect appellant's ownership of its transit facilities, while generating revenue for the continued repair, maintenance and improvement of the railroad line. R.C. 306.35
clearly grants appellant the power to enter into contracts in the exercise of the duties conferred upon it and to lease its property for any necessary purpose. The duties are delineated in the necessary purposes identified by the enabling statutes, which duties include the preservation and maintenance of transit services, as well as the promotion of community economic welfare, maintenance of the communities' commerce, and the provision of finances to improve and upgrade mass transit service in the future. It is reasonable to believe that the operation of the proposed excursion train would further these purposes.
 {¶ 32} In addition, this Court notes the Federal Transit Administration's policy to promote joint development projects, such as the operation of the excursion train, "to secure a revenue stream for the transit system and to help shape the community that is being served by the transit system." 62 F.R. 12266, 12266 (Mar. 14, 1997). The parties stipulated that the proposed excursion train was planned to be a revenue-producing project for appellant and that a number of full time jobs would be created as a result of the operation of the project. Under those circumstances, the lease between appellant and AB RR comports with the Federal Transit Administration's policies.
 {¶ 33} This Court is also not persuaded by the trial court's analysis that this matter hinges on whether or not the proposed excursion train itself constitutes a transit facility. While a regional transit authority like appellant may be created for the purpose of acquiring, constructing, operating, maintaining, replacing, improving, and/or extending transit facilities, the authority's enumerated powers pursuant to R.C. 306.35 encompass more than the management of transit facilities.
 {¶ 34} Further, this Court cannot assign such a limited meaning to the phrase "movement of passengers between locations", as did the trial court. Merely because passengers on the proposed excursion train would embark and disembark from the same location does not mean that the passengers would not have been moved between locations. The trial court found that the proposed excursion train would constitute the mere "commercial entertainment of passengers who do not move from one location to another." But the acts of movement of passengers and entertainment of passengers are not mutually exclusive. Certainly part of the entertainment of the passengers arises out of the fact that they will be transported through various locations. In this regard, this Court cannot say that the proposed excursion train would not meet the definition of a transit facility.
 {¶ 35} Given that appellant is a validly created regional transit authority and that appellant's lease and contract with AB RR comports with appellant's powers as delineated in R.C. 306.35 in furtherance of appellant's necessary purposes, this Court finds that the trial court's limited interpretation of appellant's authority pursuant to R.C. 306.31
was in error. Pursuant to the statutory powers and duties accorded to appellant pursuant to R.C. 306.35, this Court finds that appellant is well within its statutory authority to enter into a lease and contract with AB RR for the operation of an excursion train. It was error for the trial court to declare otherwise. Appellant's first assignment of error is sustained.
 III. {¶ 36} For the reasons above, appellant's third assignment of error is overruled, because appellee had standing to seek declaratory relief in regard to appellant's authority to contract for the operation of the proposed excursion train. Appellant's first and second assignments of error are sustained. Accordingly, the order of the Summit County Court of Common Pleas, which granted to appellee injunctive and declaratory relief is reversed and the cause remanded to the trial court for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
Exceptions.
Batchelder, J., Moore, J., Concur.
[1] AB RR was a defendant in the case below, but it is not a party to this appeal.