MECCON, INC. ET AL., APPELLEES, *v*. UNIVERSITY OF AKRON, APPELLANT.

[Cite as *Meccon, Inc. v. Univ. of Akron*, 126 Ohio St.3d 231, 2010-Ohio-3297.]

*Public-works contracts — Competitive bidding — Damages to unsuccessful bidder for public authority's violation of law in awarding contract — Bid-preparation costs.*

(No. 2009-0950 — Submitted January 26, 2010 — Decided July 21, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-727, 182 Ohio App.3d 85, 2009-Ohio-1700.

_____

### SYLLABUS OF THE COURT

When a rejected bidder establishes that a public authority violated state competitive-bidding laws in awarding a public-improvement contract, that bidder may recover reasonable bid-preparation costs as damages if that bidder promptly sought, but was denied, injunctive relief and it is later determined that the bidder was wrongfully rejected and injunctive relief is no longer available.

_____

**CUPP, J.**

{¶ 1} The question before us is whether bid-preparation costs may be recovered as damages by a bidder who establishes that its bid on a public-improvement project was wrongfully rejected because the public authority awarding that contract failed to comply with state competitive-bidding laws. We conclude that reasonable bid-preparation costs may be recovered if the rejected bidder promptly sought but was denied a timely injunction to suspend the public-improvement project pending resolution of the dispute and a court later determines that the bidder was wrongfully rejected by the public authority but

injunctive relief is no longer available because the project has already been started or is completed under a contract awarded to another bidder. Therefore, we affirm the judgment of the court of appeals and remand the matter for further proceedings before the Court of Claims.

{¶ 2} According to the complaint of Meccon, Inc., and Ronal Bassak, appellees ("Meccon"), the University of Akron proposed to award plumbing, fire-protection, and heating, ventilation, and air-conditioning ("HVAC") contracts for public-improvement work in its football stadium. Meccon submitted a bid for the separate HVAC project, as did other contractors. Another contractor, S.A. Comunale, submitted four bids: one for each of the stand-alone fire-protection, plumbing, and HVAC contracts and a combined bid to perform all three contracts.

{¶ 3} When the bids were opened, S.A. Comunale's combined bid was the lowest of the combination bids submitted. S.A. Comunale's bid was $1.2 million less than the next-lowest combination of bids. S.A. Comunale was also the low bidder for each of the stand-alone fire-protection, plumbing, and HVAC contracts. Meccon submitted the second-lowest bid for the HVAC work.

{¶ 4} Thereafter, S.A. Comunale withdrew its combined bid and its stand-alone plumbing bid. The university awarded the stand-alone fire-protection and HVAC contracts to S.A. Comunale. After the university rebid the stand-alone plumbing contract and S.A. Comunale was once again the low bidder, S.A. Comunale also won that contract.

{¶ 5} Meccon alleges that the university's award to S.A. Comunale of the three stand-alone contracts, after S.A. Comunale had withdrawn both its combined bid and its plumbing bid, was in violation of the university's own "Instructions to Bidders" documents and comparable provisions within Ohio statutes. Meccon filed suit in the Court of Claims, seeking a temporary restraining order, a declaratory judgment, preliminary and permanent injunctive relief, damages for its bid-preparation costs, and any other appropriate legal and

equitable relief resulting from the university's failure to award the HVAC contract to Meccon.

{¶ 6} In response, the university filed a motion to dismiss for lack of subject-matter jurisdiction. It argued that disappointed bidders were entitled only to injunctive relief and that Meccon's claim for bid-preparation costs and other money damages was not cognizable. The Court of Claims granted the university's motion, concluding that only the court of common pleas had jurisdiction because Meccon's remaining claim was only for equitable relief. On the same basis, the Court of Claims also denied the motion for a temporary restraining order, denied all other motions as moot, and dismissed the complaint.

{¶ 7} Meccon appealed to the Tenth District Court of Appeals, and the court reversed the Court of Claims with respect to the jurisdiction question. 182 Ohio App.3d 85, 2009-Ohio-1700, 911 N.E.2d 933. The court concluded that disappointed bidders can recover bid-preparation costs and that because such costs are monetary damages, the Court of Claims does have subject-matter jurisdiction to hear all of Meccon's claims. Id. at ¶ 26. The court also determined that Meccon's argument that the Court of Claims erred when it failed to consider Meccon's motion for a temporary restraining order was moot. Id. at ¶ 27, 29. We accepted the university's appeal under our discretionary jurisdiction. 122 Ohio St.3d 1502, 2009-Ohio-4233, 912 N.E.2d 107.[1]

{¶ 8} The university contends that *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, controls the disposition of this case. In *Cementech*, a public authority solicited bids for a public project. In the process of awarding the contract, the public authority unlawfully rejected Cementech's bid. The trial court awarded Cementech bid-preparation costs but

---

1. At this stage of the proceedings, the only question presented to this court is the availability of money damages. The questions pertaining to the legality of the awarding of the contracts at issue have not been addressed.

denied lost profits. Cementech appealed the trial court's order limiting damages to the bid-preparation costs. The appellate court reversed and allowed the lost profits.

{¶ 9} In reversing the appellate court, this court held: "When a municipality violates competitive-bidding laws in awarding a competitively bid project, the rejected bidder cannot recover its lost profits as damages." Id. at paragraph one of the syllabus. The holding was founded on the principle that "punishing government entities through lost-profit damages to rejected bidders in effect punishes the very persons competitive bidding is intended to protect — the taxpayers." Id. at ¶ 12. We also explained that the purposes of competitive bidding, which are to prevent excessive costs and corrupt practices and to provide open and honest competition in bidding for public-improvement contracts, clearly militate against allowing lost-profit damages to wrongfully rejected bidders. Id. at ¶ 9. Allowing such damages harms taxpayers by forcing the taxpayers to bear extra costs, which include both the unjustifiably higher prices paid to the wrongfully chosen bidder for the public contract and, if awarded, the damages established by the disappointed bidder that did not perform the work, including lost profits, which are often speculative and significant. Id. In that setting, we concluded that injunctive relief and the resulting delays in commencing the project serve as a sufficient deterrent to a public authority's violation of competitive-bidding laws. Id. at ¶ 11.

{¶ 10} According to the university, *Cementech* holds that bid-preparation costs and other money damages cannot be recovered by a rejected bidder for a public project and that injunctive relief is the only available remedy. The university further asserts that since the remaining relief requested in Meccon's action is equitable, the Court of Claims has no jurisdiction over that claim and the Court of Claims properly granted the university's motion to dismiss. Correspondingly, the university argued before the appellate court that Meccon's

4

appeal to that court was also moot because injunctive relief requested by Meccon had been denied earlier in the proceedings.

{¶ 11} The issue of whether bid-preparation costs could be recovered by a wrongfully rejected bidder was not answered in *Cementech.*[2] Upon consideration of the arguments in this case on the availability of reasonable bid-preparation costs as damages, we decline to extend the holding in *Cementech* to this circumstance.

{¶ 12} We reach this conclusion because the reasons articulated in *Cementech* for denying recovery of lost profits as damages do not carry over to the circumstances in which bid-preparation costs are sought after denial of a timely application for injunctive relief. A significant distinguishing factor in those circumstances is the lack of any other remedy for a public authority's wrongful conduct. If, for instance, a rejected bidder alleges that a public authority failed to comply with competitive-bidding laws and promptly seeks injunctive relief to delay the public-improvement project pending resolution of the dispute, denial of the requested injunctive relief means that determination of the allegation of wrongful conduct by the public authority will not take place until much later in the litigation. Under our precedent, once the public-improvement work commences or is completed, the rejected bidder will not be able to perform the public contract even if the bidder demonstrates that its bid was wrongfully rejected. *Cementech,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, ¶ 13.

{¶ 13} In such circumstances, the wrongfully rejected bidder is left with no remedy for the public authority's unlawful conduct, and injunctive relief will no longer serve to deter the public authority's unlawful conduct. Thus, we hold that when a rejected bidder establishes that a public authority violated state competitive-bidding laws in awarding a public-improvement contract, that bidder

---

2. There was no cross-appeal filed by the public authority in *Cementech* questioning the trial court's award of bid-preparation costs. 160 Ohio App.3d 450, 2005-Ohio-1709, 827 N.E.2d 819.

may recover reasonable bid-preparation costs as damages if that bidder promptly sought, but was denied, injunctive relief and it is later determined that the bidder was wrongfully rejected and injunctive relief is no longer available.

{¶ 14} By requiring a wrongfully rejected bidder to first seek injunctive relief and allowing the bidder to be awarded reasonable bid-preparation costs only if erroneously denied timely relief, we are applying a form of the well-established principle of mitigation of damages. For if injunctive relief is timely granted, then a wrongfully rejected bidder will have avoided the damages that would otherwise flow from the public authority's wrongful conduct by preventing the improper awarding of the contract or by suspending the contract before it has been performed to such an extent that the bid award is no longer subject to timely correction.

{¶ 15} However, when the wrongfully rejected bidder pursues injunctive relief in a timely and good-faith manner but is erroneously denied the relief by the trial court, and the award of the contract to another bidder and the performance by that bidder have progressed beyond the point of correction, then the bidder should be able to recover the reasonable cost it incurred in the preparation of its bid. But for the noncompliance with the competitive-bidding laws by the public authority, the bid would have been accepted, and the contract would have been awarded to the complaining bidder.

{¶ 16} This rule, together with the rule prohibiting recovery of the more speculative lost-profit damages, seems best calculated to strike a balance between protecting the public from incurring extra cost due to the misconduct of the public authority, ameliorating the damages sustained by the lowest and best bidder in its good-faith participation in the competitive-bidding process, and deterring the public authority from violations of the competitive-bidding law.

{¶ 17} The appellate court also recognized the distinction between bid-preparation costs and lost profits as damages: "There are good public-policy

reasons favoring [the recovery of bid-preparation costs]. First, without some penalty, there is little deterrent to a public entity who fails to follow the competitive-bidding statutes. Second, contractors may be reluctant to bid on public projects when they suspect the competitive bidding will not be conducted fairly. Ultimately, refusal to bid harms the public as the pool of qualified bidders shrinks. Any harm to the public from these types of damages is de minimus when compared to the harm to the public from recovery of lost profits. Allowing recovery of bid-preparation costs will serve to enhance the integrity of the competitive-bidding process." 182 Ohio App.3d 85, 2009-Ohio-1700, 911 N.E.2d 933, at ¶ 24.

{¶ 18} We hold that in appropriate circumstances, as delineated above, reasonable bid-preparation costs are recoverable as money damages.

{¶ 19} When Meccon filed its action for money damages and injunctive relief against the university, it filed it in the Court of Claims. The Court of Claims has exclusive, original jurisdiction over civil suits that request money damages against the state even when ancillary relief, such as an injunction or declaratory judgment, is also sought. R.C. 2743.03(A)(1) and 2743.03(A)(2); *State ex rel. Blackwell v. Crawford*, 106 Ohio St.3d 447, 2005-Ohio-5124, 835 N.E.2d 1232, ¶ 20. Therefore, the Court of Claims had jurisdiction to hear Meccon's claim for bid-preparation costs.

{¶ 20} Injunctive relief must be promptly sought as a precondition to those damages, however. The university contends that Meccon waited two full months after the bids were opened to seek injunctive relief. Meccon states that it requested injunctive relief four business days after it learned that the university had awarded the plumbing, fire-protection, and HVAC contracts in violation of the state's competitive-bidding laws. Whether Meccon was timely in its pursuit of injunctive relief satisfying this precondition for an award of its bid-preparation

costs as damages is a matter that has not yet been addressed by any court. Consequently, a remand to the Court of Claims to consider this matter is required.

{¶ 21} Accordingly, the judgment of the court of appeals is affirmed, and the matter is remanded to the Court of Claims for further proceedings.

Judgment affirmed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., not participating.

_____

Thompson Hine, L.L.P., Peter D. Welin, and Andrew R. Fredelake, for appellees.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, Emily S. Schlesinger, Deputy Solicitor, and William C. Becker and Lisa J. Conomy, Assistant Attorneys General, for appellant.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging reversal for amici curiae, Ohio Municipal League, County Commissioner Association of Ohio, and Ohio Township Association.

_____