[Cite as *ParkPlay Solutions, L.L.C. v. Avon Lake*, 2023-Ohio-3103.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

PARKPLAY SOLUTIONS, LLC

    Appellee

    v.

CITY OF AVON LAKE, et al.

    Appellant

C.A. No.    22CA011848

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    22 CV 205108

DECISION AND JOURNAL ENTRY

Dated: September 5, 2023

STEVENSON, Judge.

{¶1} Appellant City of Avon Lake ("Avon Lake" or "the City") appeals the decision of the Lorain County Court of Common Pleas granting declaratory and injunctive relief to Appellee ParkPlay Solutions, LLC's ("ParkPlay"). For the reasons that follow, we reverse.

I.

{¶2} Avon Lake is a home rule municipality with a duly adopted Charter under Article XVIII of the Ohio Constitution. In 2021, the City budgeted $750,000.00 for a public-improvement playground renovation project known as Avon Lake Play Space ("the Project"). The City terminated the first company that it hired to design-build the Project after that company failed to meet the City's needs.

{¶3} Timothy Pinchek, the City's recreation director, then solicited open-ended proposals for the Project from four playground designers. A specially formed committee selected

the four playground designers. ParkPlay and Michigan Playgrounds, LLC dba Midstates Recreation ("Midstates") were among the four companies contacted by Mr. Pinchek.

{¶4} The City did not provide the selected four playground designers with a specific concept or set of blueprints. Rather, the City requested that each of the four playground designers propose their own concept and project quote.

{¶5} After the playground designers presented their designs to the City, the City notified ParkPlay and Midstates that they were selected as the two finalists and meetings were held with each company. The City requested further documentation, including quotes and itemizations, from ParkPlay and Midstates. After reviewing all submitted documentation, the City, by and through its committee, decided to proceed with Midstates' design. The City notified ParkPlay that it was not chosen to complete the Project.

{¶6} After selecting Midstates' design, the committee's recommendation went before the City's parks and recreation commission. The parks and recreation commission voted to approve the committee's recommendation and the matter then went before the public service committee. Once the recommendation to proceed with Midstates was approved by the public service committee, the recommendation was presented to City council who voted to approve Midstates' Project design.

{¶7} After learning that it was not chosen to complete the Project, ParkPlay contacted the City and voiced its objections to the proposal submission process. The City continued to move forward with Midstates and the Project. In preparation for the new playground, the City had the old playground equipment removed from the Project site pursuant to a separate contract.

{¶8} ParkPlay filed a complaint and a motion for temporary restraining order and injunctive relief with the trial court on January 20, 2022. ParkPlay asserted that the City failed to

comply with mandatory state law competitive-bidding requirements. The trial court denied ParkPlay's motion for temporary restraining order on January 27, 2022 and the case remained pending. ParkPlay did not request or obtain a stay preventing the City and Midstates from moving forward with the Project.

{¶9} City council passed Ordinance No. 21-186, after three readings, on January 31, 2022. This Ordinance passed and was adopted by a vote of 5-0, with the sixth council member absent. Ordinance No. 21-186 authorized the City's mayor "to negotiate and enter into a contract with Midstates * * * to provide professional design-build services for the Project." Ordinance No. 21-186 was passed as an emergency ordinance and the Project contract was awarded to Midstates on January 31, 2022.

{¶10} Once the City and Midstates entered into a contract, the City issued purchase order 2022-00000671 to Midstates, in the amount of $499,135.40, for phase 1 of the Project and Midstates ordered custom and general playground equipment. Midstates ordered "[a]ll of the Playworld, Berliner, [and] Freenotes Harmony equipment" and put a deposit down on "[t]he poured-and-play surface." Midstates put a deposit on the poured-and-play surface "so that the pricing could be held and not raised for 2022 because of material shortages, et cetera." This was all done before the issuance of an injunction or restraining order. A stay was not in place when the City and Midstates moved forward pursuant to the contract.

{¶11} ParkPlay filed a second motion for temporary restraining order and for injunctive relief with the trial court on March 9, 2022. The trial court granted ParkPlay's motion for temporary restraining order on March 10, 2022. The trial court's order restrained the City and Midstates from

> [t]aking any further action on, executing, performing, and transferring any funds as
> payment for or in connection with any contract between Avon Lake and Midstates

resulting from or arising out of Avon Lake Ordinance No. 21-186 and purchase order number 2022-00000671 until further order of this court[.]

The trial court's order also restrained the City and Midstates "from commencing construction of [the Project] or taking any steps to prepare for commencing construction until further order of this court."

{¶12} The trial court issued a temporary restraining order after the City and Midstates entered into a contract; after the City issued a purchase order to Midstates for phase 1 of the Project; after Midstates ordered custom playground equipment and general equipment for the project; and, after Midstates placed a deposit on the playground surface.

{¶13} With leave of court, ParkPlay's amended complaint was accepted for filing on March 11, 2022. ParkPlay again requested injunctive relief and sought a declaratory judgment that the contract between the City and Midstates is illegal as the City failed to comply with mandatory bidding requirements.

{¶14} A two-day bench trial was held and the trial court issued a written decision on March 22, 2022. The trial court granted ParkPlay's request for a permanent injunction and, on ParkPlay's request for declaratory judgment, held that the City "failed to [follow] controlling state law, the Charter provisions, and the ordinance concerning competitive bidding;" "[t]he selection of Midstates and issuance of any contract between the City of Avon Lake, its employees or agents, and Midstates is void and unenforceable;" and, "Midstates is not entitled to compensation as a result of the unenforceable contract."

{¶15} The trial court held that the City sought and awarded a design-build contract and that it was required to follow the bidding and selection procedure set forth in R.C. 153.65 *et seq.* Because the City did not follow the proposal and bidding process required for awarding a design-build contract, the trial court found that the contract was unenforceable. The City appeals, asserting

four assignments of error for review.[1] To facilitate our analysis, we elect to address the City's assignments of error out of order.

II.

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT PARKPLAY'S REQUEST FOR INJUNCTIVE RELIEF WAS NOT MOOT, GIVEN THAT PARKPLAY WAS A DISGRUNTLED BIDDER AND PERFORMANCE OF THE UNDERLYING CONSTRUCTION CONTRACT HAD COMMENCED.**

**{¶16}** The City argues in its second assignment of error that, as performance pursuant to the underlying contract commenced, the trial court erred as a matter of law by determining that ParkPlay's request for injunctive relief was not moot. We agree.

**{¶17}** This Court applies an abuse of discretion standard of review to the trial court's granting of an injunction. *Silver Lake v. Metro Regional Transit Auth.*, 9th Dist. Summit No. 22199, 2005-Ohio-2157, ¶ 11. "The term 'abuse of discretion' connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶18}** "A matter becomes moot when the issues 'are no longer 'live.'" *Jacobson v. Akron Children's Hosp.*, 9th Dist. Summit No. 30188, 2023-Ohio-2225, ¶ 54. Ohio law has established that:

> [i]n a construction-related case, if an unsuccessful bidder seeking to enjoin the construction of a public-works project fails to obtain a stay of the construction

---

[1] This Court granted Ohio Municipal Attorneys Association's ("OMAA") motion for leave to file amicus curiae brief and, accordingly, OMAA's amicus curiae brief was accepted. OMAA's brief was filed in support of Avon Lake.

pending judicial resolution of its claims challenging the decision, and construction commences, the unsuccessful bidder's action will be dismissed as moot.

*State ex rel. Gaylor v. Goodenow*, 125 Ohio St.3d 407, 410 , 2010-Ohio-1844, ¶ 11; *Frank Novak & Sons, Inc. v. Avon Lake Bd. of Edn.*, 9th Dist. Lorain No. 01CA007835, 2001-Ohio-1880 (request for injunctive relief rendered moot where movant did not obtain a stay of execution and contract was awarded to another bidder); *State ex rel. Wenger Corp. v. The Univ. of Akron*, 9th Dist. Summit No. 8078, 1976 WL 188839 (July 8, 1976) (appeal moot where plaintiff failed to obtain a stay of execution and the defendant proceeded to consider and award the contract to another company); *Schuster v. Avon Lake*, 9th Dist. Lorain No. 03CA008271, 2003-Ohio-6587 (appeal and request for injunctive relief moot where movant did not obtain a stay of execution and construction commenced).

{¶19}  This Court addressed the issue of mootness, in relation to construction bids, in *Frank Novak & Sons, Inc.*, 2001-Ohio-1880.  In *Frank Novak & Sons*, the Avon Lake Board of Education and Avon Lake City School District solicited bids for the construction and installation of a gymnasium floor at the high school.  Appellant Frank Novak & Sons ("Novak") and appellee Cincinnati Floor Company submitted bids for the project. Novak filed a complaint in the court of common pleas, seeking a declaratory judgment and preliminary and permanent injunctive relief, after Cincinnati Floor was selected for the renovation project. Novak also "filed a motion for temporary restraining order restraining Avon Lake Schools from accepting Cincinnati Floor's bid, from entering into a contract with Cincinnati Floor, and from allowing Cincinnati Floor to perform any work on the project." *Id*. at *1 The common pleas court denied Novak's motion for temporary restraining order and request for preliminary injunction. Like ParkPlay, Novak did not seek a stay of execution of the trial court's ruling denying its motion for temporary restraining order and request for preliminary injunction.

**{¶20}** This Court concluded that "Novak's appeal was rendered moot by Avon Lake School's awarding the contract to Cincinnati Floor." *Id.* . While Novak argued on appeal that the repetition exception to mootness applied, this Court disagreed and provided:

> In this case, Novak could have sought a stay of the trial court's ruling * * * but declined to do so. Furthermore, this Court does not agree that the issue raised by Novak is subject to repetition. *Construction bids are based on unique facts that are not likely to be repeated.*

(Emphasis added.) *Id.* at *2.

**{¶21}** The trial court denied ParkPlay's initial request for injunctive relief on January 27, 2022. When its initial request was denied, ParkPlay did not obtain a stay of execution prohibiting the City from moving forward and awarding the contract to Midstates. Accordingly, when injunctive relief was denied, the City moved forward on the Project and Midstates changed its position in reliance on the contract. Once a contract was entered into, the City issued purchase order 2022-00000671 to Midstates, in the amount of $499,135.40, and Midstates ordered custom and general playground equipment. Midstates ordered "[a]ll of the Playworld, Berliner, [and] Freenotes Harmony equipment" and put a deposit down on "[t]he poured-and-play surface." This was all done pursuant to the contract before the issuance of an injunction or restraining order.

**{¶22}** Because ParkPlay did not obtain a stay, and the City and Midstates entered into a contract and commenced action pursuant to the parties' contract, ParkPlay's request for further injunctive relief was rendered moot and the trial court erred as a matter of law when it granted an injunction. The City's second assignment of error is sustained.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY INTERPRETING THE HOME RULE CHARTER OF THE CITY OF AVON LAKE, OHIO NOT TO AUTHORIZE THE COMPETITIVE DESIGN/BUILD PROCEDURE METHOD USED IN THIS CASE.**

{¶23} The City argues in its first assignment of error that the trial court erred when it interpreted the City's home rule charter and determined that the City was not authorized to utilize the competitive design/build procurement method that was used in this case. We agree.

{¶24} The City concedes that, even if a contract has been awarded to another company such that a request for injunctive relief is moot, a wrongfully rejected bidder may be entitled to bid-preparation costs if it establishes that the public authority awarding the contract failed to comply with state competitive-bidding laws. *Meccon, Inc. v. Univ. of Akron*, 126 Ohio St.3d 231, 2010-Ohio-3297, ¶ 13.. Accordingly, regardless of this Court's conclusion in Assignment of Error No. 2, Assignment of Error No. 1 must be addressed because, at a minimum and as acknowledged by the City, ParkPlay could be entitled to bid-preparation costs. *Id.* at syllabus ("When a rejected bidder establishes that a public authority violated state competitive-bidding laws * * *, that bidder may recover reasonable bid-preparation costs as damages[.]")

{¶25} The pertinent underlying facts are not in dispute. In dispute is whether, in soliciting and selecting a bid for the Project, the City complied with its own Charter or whether the City was required to comply with the design-build bidding process required by the Ohio Revised Code. Whether the trial court incorrectly interpreted the City's Charter or the Revised Code presents a legal question. We accordingly apply a de novo standard of review on appeal. *Young v. Young*, 9th Dist. Wayne No. 09CA0067, 2010-Ohio-3658, ¶ 17; *In re S.H.*, 9th Dist. Medina No. 13CA0057-M, 2013-Ohio-3708, ¶ 34. As this Court previously stated, "[i]n conducting a de novo review, this Court gives no deference to the trial court's legal conclusions." *J. Bowers Constr. Co.*, *Inc. v. Gilbert*, 9th Dist. Summit No. 27044, 2014-Ohio-3576, ¶ 21.

{¶26} It is undisputed that the City is a home rule municipality with a duly adopted charter under Ohio Constitution, Article XVIII, Section 7. This Article, known as the Home Rule

Amendment, states that any municipality "may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Ohio Constitution, Article XVIII, Section 7. "'Section 7 of the home rule amendment confers power on the municipality to frame and adopt a charter for its government, and to exercise thereunder all powers of local self-government as provided by Section 3.'" *Dies Elec. Co. v. City of Akron,* 62 Ohio St.2d 322, 325 (1980), quoting *Froelich v. Cleveland*, 99 Ohio St. 376, 390-391 (1919).

{¶27}  Ohio Constitution, Article XVIII, Section 3 authorizes municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."  Article XVIII, Section 3 does not "restrict the power [of the charter municipality] to enact laws for 'local self-government.'" *Dies Electric* at 325. "The citizens of the municipality are, thus, given power to construct their own local government and to operate it themselves."  *Greater Cincinnati Plumbing Contrs. Assoc. v. Blue Ash*, 106 Ohio App.3d 608, 612 (1st Dist.1995).

{¶28}  In accordance with the Home Rule Amendment, the City adopted a Charter that provides at Chapter I, Section 2:

> The Municipality shall have all powers of local self-government now and hereafter granted to municipalities by the Constitution of the State of Ohio, and such further powers as are now or hereafter granted by the laws of the State of Ohio; and all such powers shall be exercised in the manner prescribed by this Charter or by ordinances of Council created hereby.  Enumeration of or reference to particular powers by this Charter shall not be construed to be exclusive.

{¶29}  With respect to public procurement, the Charter provides at Chapter X, Section 59, titled "Competitive Bidding":

> Council or the Board of Municipal Utilities shall not authorize expenditures in excess of that provided by the Ohio Revised Code, unless pursuant to contract made with the person, firm or corporation whom Council or the Board of Municipal

Utilities determines to be the lowest and best responsible bidder, after public advertising and receipt of bids in the manner provided in this section and the ordinances of Council or, to the extent not in conflict with such ordinances, the regulations of the Board of Municipal Utilities.

Council or the Board of Municipal Utilities may authorize the expenditure of funds exceeding that provided by the Ohio Revised without public bidding * * * for personal services * * * .

* * *

Council or the Board of Municipal Utilities may also authorize the expenditure of funds exceeding that provided by the Ohio Revised Code without public bidding, for any purpose which contracts may be awarded by a municipal corporation without advertisement or competitive bidding under the general laws of the State of Ohio.

"Personal services" include those services "normally rendered by an architect, an engineer and other professional person irrespective of whether that skill is discharged through an individual's corporation, partnership or firm."

{¶30} City Charter Chapter X, Section 60, pertains to "public improvements" and provides:

Public improvements of all kinds may be made by the appropriate department either by the direct employment of the necessary labor and purchase of supplies in the manner herein provided, with separate account being kept as to each improvement so made; or by contract let as provided in the next preceding section, either for a closed, firm bid price, or upon a unit basis.

{¶31} As recognized by the Ohio Supreme Court, charter municipalities have "'the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest.'" *State Personnel Bd. of Rev. v. Bay Village Civ. Serv. Comm.*, 28 Ohio St.3d 214, 218 (1986), citing *State ex. Rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212 (1948). A city has broad, plenary powers to enact its own procurement procedures when pursuing public improvements, which are a matter of local self-government. *Dies Electric*, 62 Ohio St.2d at 326-327; *Blue Ash*, 106 Ohio App.3d at 613-614.

Neither party disputes that a playground improvement project is a public improvement and a matter of local self-government.

{¶32} A charter municipality's exercise of authority over matters of local self-government prevails over general state laws. *Blue Ash,* 106 Ohio App.3d at 613. This Court has recognized that Section 3 of Article XVIII of the Ohio Constitution "does not * * * limit the municipality's power over matters of local self-government" and that "[a] provision enacted pursuant to a municipality's power of local self-government will, therefore, take precedence over a conflicting state provision." *Talbert v. City of Akron*, 9th Dist. Summit No. 11173, 1984 WL 6104, *2 (April 4, 1984). "In matters of local self-government, if a portion of a municipal charter expressly conflicts with parallel state law, the charter provisions will prevail." *State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134, 138 (1995).

{¶33} ParkPlay argued, and the trial court agreed, that the City failed to comply with mandatory competitive bidding requirements for design-build projects as set forth in R.C. 153.65 *et seq*. A similar argument was before the court in *Blue Ash*. The city in *Blue Ash* solicited bids for phase III of a recreation center renovation. The city's "design-build process provided end specifications to the bidding contractors, but transferred the determination of how to get there to the contractors." *Id.* at 611. The city in *Blue Ash* engaged in a bidding process pursuant to its charter instead of complying with state competitive bidding requirements.

{¶34} Like ParkPlay, the plaintiffs argued in *Blue Ash* that "[t]he city's charter did not authorize the design-build contracting and the city was, therefore, required to follow the general law on soliciting bids for its public improvement project." *Id.* at 612. The city's charter provided that "[c]ouncil shall authorize acceptance of the bid made by the responsible bidder who in

Council's judgment offers the best and most responsive proposal to the City, considering quality, service, performance record, and price." *Id.* at 614.

**{¶35}** After discussing the Home Rule Amendment and recognizing that "[t]he citizens of a municipality are * * * given power to construct their own local government and to operate it themselves[,]" *Id*. at 612, the court in *Blue Ash* provided:

> [t]he city's design-build bidding process for Phase III of its recreation facility improvements was not an exercise of municipal police power. Rather, the bidding process utilized for this public project was an exercise of the city's local self-government. Therefore, the city, as a charter municipality, in the exercise of its powers of local self-government under Section 3, Article XVIII, Ohio Constitution, may, pursuant to its charter, enact a bidding process for improvements to public property which differs from the bidding process contained in the Ohio Revised Code.

*Id.* at 613-614. The *Blue Ash* court concluded that the city's bidding process for its recreation facility "was in conformity with the broad provisions of its charter[]" which required the city "to accept 'the bid made by the responsible bidder who in Council's judgment offers the best and most responsive proposal to the City, considering quality, service, performance, record, and price.'" *Id.* at 614.

**{¶36}** Like the city in *Blue Ash*, the City asked the playground designers to propose their own concept and a project quote. Hence, the City "transferred the determination of how to get [a new playground design and concept] to the contractors." *Id.* at 611.

**{¶37}** Chapter 10, Section 59 of the City's Charter addresses competitive bidding. This section of the City's Charter provides that:

> Council * * * shall not authorize expenditures in excess of that provided by the Ohio Revised Code, unless pursuant to contract made with the person, firm, or corporation whom Council or the Board of Municipal Utilities determines to be the lowest and best responsible bidder, after public advertising and receipt of bids in the manner provided in this section and the ordinances of Council[.]

{¶38} The City's Charter then lists several situations under which council can authorize the expenditure of funds exceeding that provided by the Ohio Revised Code without public bidding. *Id.* The Charter states that "[c]ouncil * * * may authorize the expenditure of funds exceeding that provided by the Ohio Revised Code without public bidding, * * * for personal services[.]" *Id.* "Personal services" are "act[s] performed by a particular entity, including an individual, corporation, partnership or firm, which is, in effect, an economic service, including either the intellectual or manual effort of that entity, not the saleable product of his, her or its skill[,]" and "[t]his includes, without limitations, the individual personal and professional services normally rendered by an architect, an engineer and other professional person irrespective of whether that skill is discharged through an individual's corporation, partnership or firm." *Id.* We note that the language in a municipal charter is to be construed according to its ordinary and common usage. *State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 142 (1994).

{¶39} In construing the Charter language according to its ordinary and common usage, the Midstates' services are personal services under the Charter. The City budgeted $750,000.00 for a playground renovation project that required the intellectual effort of Midstates to design a park playground for the Project. The Project was a matter of local interest and self-government. The City did not provide the four selected playground designers with any specific concepts or blueprints. Rather, as in *Blue Ash*, the City "transferred the determination of how to get [a new playground] to the contractors." *Blue Ash*, 106 Ohio App.3d at 611.

{¶40} In summary, the City sought "personal services" as defined in the Charter from the four playground designers. The City relied upon the playground designers to develop new playground concepts and provide quotes for their designs and proposals. Per Chapter 10, Section 59, of the City Charter, the playground designers provided "professional services normally

rendered by an architect, an engineer and other professional person." The playground designers developed and designed their own playground concepts, presented their concepts to the City, and provided quotes for their design concepts. Accordingly, we conclude that the bidding process the City utilized for the Project was a proper exercise of its home rule power under its Charter and that the utilized proposal process complied with the City's Charter.

{¶41} For the reasons set forth above, we conclude that the City's Charter authorized the City to enter into a contract with Midstates. Appellant's first assignment of error is, accordingly, sustained.

### ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING AN INJUNCTION AGAINST PROCEEDING WITH A PUBLIC PROJECT WHERE THE DISGRUNTLED BIDDER SUBVERTED THE PROCESS BY SURREPTITIOIUSLY OBTAINING PREVIOUSLY REJECTED PROPOSAL DOCUMENTS, RENDERING ITS HANDS UNCLEAN**.

### ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING AN INJUNCTION AGAINST PROCEEDING WITH A PUBLIC PROJECT WHERE PERFORMANCE ALREADY HAD BEGUN, THE PRIOR IMPROVEMENT BEING REPLACED ALREADY HAD BEEN DEMOLISHED, AND THE DISGRUNTLED BIDDER WAITED UNTIL AFTER IT WAS NOT SELECTED TO RAISE ANY COMPLAINT ABOUT THE PROCESS.**

{¶42} The City again argues in its third and fourth assignments of error that the trial court abused its discretion when it granted an injunction. Based on this Court's resolution of the second assignment of error, and conclusion that the trial court erred as a matter of law when it granted an injunction, the third and fourth assignments of error are moot.

III.

**{¶43}** For the reasons set forth above, the City's first and second assignments of error are sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

KEITH A. SAVIDGE, GARY A. EBERT, DANIEL F. GOURASH, JEFFREY S. MOELLER, and AMELIA J. LEONARD, Attorneys at Law, for Appellant.

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellee.